Tannenbaum, Appel. *v.* Connecticut Fire Ins. Co.
Tannenbaum, Appel. *v.* Allemannia Fire Ins. Co.
Tannenbaum, Appel. *v.* American Alliance Ins. Co.

Argued May 6, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Samuel Wagner,* with him *Harry Shapera* and *Howard Zacharias,* for appellant.

*D. C. Jennings,* for appellee.

OPINION BY RHODES, J., July 15, 1937:

Plaintiff instituted actions in assumpsit against defendants on three policies of fire insurance. The three cases were tried together and resulted in a verdict totaling $2,000, with interest, apportioned between the respective defendants.

Plaintiff's statements of claim averred that a fire occurred on plaintiff's premises on October 12, 1931, causing a loss to plaintiff in the sum of $3,500. The affidavits of defense filed by defendants set up two defenses: (1) That the loss was caused by explosion and not by fire; and (2) that there was no waiver of filing of proofs of loss.

At the conclusion of the trial, the trial judge submitted to the jury three questions which, with the answers, were as follows: Question 1: Was there a hostile fire preceding the explosion? Answer: Yes. If so, how much damage due thereto? Answer: $900.00. Question 2: What damage was due to explosion without fire? Answer: $1100.00. Question 3: Was there fire following the explosion? Answer: No.

The policies upon which the claim was based were issued by the defendants, whereby plaintiff was insured "against all direct loss and damage by fire" to his building at No. 131 South Negley Avenue, Pittsburgh, Pa., in the aggregate amount of $26,000. Defendants having filed motions for judgment n. o. v., judgments not-

withstanding the verdict were entered for the defendants, from which plaintiff has appealed.

The policies contain the following provision: "Unless otherwise provided by agreement in writing added hereto, this company shall not be liable for loss or damage occurring......(g) by explosion or lightning, unless fire ensue, and in that event for loss or damage by fire only." With the exception of the amount of the respective policies, the three cases were identical.

Appellant in his brief has well stated the crucial question before us as follows: "It is conceded by the appellees......that if the fire preceded the explosion, the loss was one that was covered by the policies. This case, then, resolves itself entirely upon the sole question of whether or not there is any competent evidence to support the finding of the jury that the fire preceded the explosion."

Appellant's apartment building consisted of nine apartments; three on each floor. On October 12, 1931, about ten minutes before noon, Mrs. Reedy went into a vacant apartment on the first floor which she had just rented. She was accompanied by a Mr. Lemmon, a tenant of an adjoining apartment on the same floor. Each apartment had four rooms and a bath. The Reedy and the Lemmon apartments were opposite each other; and on this particular occasion Mrs. Reedy left her two small children in the Lemmon apartment, the doors of which were left open as they entered the Reedy apartment. There was a gas fire burning in a stove in the Lemmon apartment. After Mrs. Reedy and Mr. Lemmon had been in the Reedy apartment a few minutes, they entered the kitchen of that apartment, where they detected the odor of gas. Immediately thereafter an explosion occurred in which Mrs. Reedy was seriously burned by the flash of the explosion, and Mr. Lemmon fatally. The clothing of the Reedy children in the Lemmon apartment was scorched, and one child was

slightly burned by the. flash. The testimony was somewhat conflicting as to the extent of the resulting damage to the walls, plaster, wallpaper, woodwork, etc., of appellant's building.

Mrs. Reedy was the only eyewitness of the occurrence to testify; and appellant contends that her testimony is clear enough to show that there was a fire which preceded the explosion, and that there was such a fire is substantiated by the testimony of Dr. H. C. Bashioum, an expert.

We are of the opinion that the testimony of neither of these witnesses affords, as appellant contends, any basis for a finding that the gas explosion was preceded by a hostile fire. The pertinent portions of Mrs. Reedy's testimony are the following: "Q. And then you went in the apartment No. 3 with Mr. Lemmon? A. Yes, and we went in the kitchen and why, we smelled gas and I said to Mr. Lemmon, 'We better get out of here,' and I said I smelled gas and to notify the gas company and I laid my purse on the sink just as I went in, and just as I went to pick my purse to go out of the building, there was a flash of fire and it seemed to fill the whole place, but I didn't know what did happen. The doors and the windows all were broken and you could hear glass flying, and I went out of the apartment then and the door fell down just as I went out and I went over and got my children......and went out on the street....... Q. That flash of fire that seemed to fill the whole apartment, can you describe that a little more minutely? A. Well, it happened so quick, just like the whole place was filled with fire. It just lasted a short time. Q. Well, how long would you say the fire lasted before the explosion took place? A. Oh, not very long. Q. Could you give us any time, any idea about the time? A. It seemed to last a second....... Q. And then came the explosion? A. Yes........ Q. This flash you say just lasted a very short. time? A. Yes. Q. And

was the noise of the—or the noise of breaking of glass and so on, that accompanied it; that is, started immediately at the time? A. Yes. Q. In other words, there was an explosion there when this occurred? A. Yes, there was....... Q. You stated that you heard the glass breaking as you came out of the apartment building? A. Yes. Q. Then it didn't occur at the moment you were standing against the sink? A. Everything happened so quick, the minute the place was filled with that sheet of flame, you know, that flash happened that minute. ...... Q. Now, when the place was filled with fire, how long did you say after that, after you noticed that, did the explosion occur? A. Well, it seemed to all happen at the same time."

Dr. Bashioum, in answer to a hypothetical question which included the fact that there were open fires burning in the Lemmon apartment, and that the doors were open in both apartments, testified: "There was a combustible and explosive mixture of gas and air in the room or apartment in which the parties named in the question entered. This combustible mixture was, in my opinion, ignited by the burning gas in the other apartment, and as a result of this ignition the mixture of gas and air in the apartment burned very rapidly, in fact almost instantaneously with the liberation of a large quantity of heat, which heat raised the temperature of the gases resulting from the composition of the combustible gas and any unused air in the room to a higher temperature and consequently to a high pressure, which pressure was determined by the resistance of the retaining or confining walls, including the windows as walls. As a result of this high pressure the windows were broken and the walls broken or distorted...... Q. I believe you said, professor, that this whole process of the ignition of the gas, the burning of the gas and the explosion and forcing out of the walls and container that are not strong enough to hold it, is what is known

as an explosion? A. We substitute explosion with violent bursting. Q. That is true in the ordinary and popular sense, and in the scientific sense? A. I am using the term in the popular sense....... Q. But it is all part of the same operation, you said before? A. Yes, it is part of the same operation if this combustion takes place in a confined space, and suddenly." ......"Q. How much time would elapse between the burning and the building up of this pressure creating an explosion? A. The time of course is measurable by delicate physical instruments, but the time is not measurable by mere observation, particularly if one were present in this room when that happened; he wouldn't know which happened first, providing he was still alive; that is, the explosion; that is, the noise he heard, whether it happened first or whether he was surrounded by the flame before he heard the noise. Nobody would be reliable to make such statement for the simple reason that they would be very much confused and the interval of time would be too small." Dr. Bashioum further testified that the temperature created by the flash of the explosion approximated 2500 degrees Fahrenheit, and that, if the flash came into contact with woodwork and paper on the walls, it would char and scorch them even if there was no ignition.

The testimony, viewed in a light most favorable to appellant, does not support any inference or finding that there was a preceding hostile fire burning in the insured building before the explosion occurred. For appellant to recover, such a fire must have preceded the explosion and ignited the gas. A hostile fire is one that, if it had pursued its natural course, would have resulted in a total or partial destruction of the insured property. *New Hampshire Fire Ins. Co. v. Rupard et al.,* 187 Ky. 671, 220 S.W. 538. The flash of the explosion in the instant case was not itself a preceding hostile fire. The burning of the gas, which was the flash,

was in the ordinary sense an integral part of the explosion, although actually but not perceptibly ignition and combustion must have preceded the explosive result.

"An explosion produced by ignition, according to common understanding, may be accurately enough described for practical purposes as a sudden and rapid combustion, causing a violent expansion of the air, and producing a report more or less loud, according to the resistance offered. That it greatly varies in its degrees of violence and the effects produced are facts fully within the knowledge of all. The term as used in policies of insurance must be supposed to have been used in its ordinary and popular meaning. *Transatlantic Fire Ins. Co. of Hamburg v. Dorsey,* 56 Md. 70, 81, 40 Am. Rep. 403": 3 Words & Phrases (First Series), p. 2598.

"The scientist may demonstrate, in a case where gunpowder is destroyed by fire, or in any case where the explosion is caused by or accompanies combustion, that ignition and combustion precede the explosion; but the common mind has no conception of such combustion, as a fact independent of the explosion where they occur in such rapid succession that no appreciable space of time intervenes. The terms of this policy must be taken in their ordinary sense": *United Life, Fire & Marine Ins. Co. v. Foote et al.,* 22 Ohio State 340, 10 Am. Rep. 735. See, also, *Mitchell v. Potomac Insurance Co. of Georgetown, D. C.,* 183 U. S. 42, 22 Sup. Ct. 22, 46 L. Ed. 74.

It must appear that the risk insured against was the proximate cause of the loss in order for appellant to recover, although a peril outside the policies may have remotely or incidentally contributed thereto. *Trexler Lumber Co. v. Allemannia Fire Ins. Co.,* 289 Pa. 13, 18, 136 A. 856. In the instant case the risk insured against was "all direct loss and damage by fire."

The friendly or innocent fire in the Lemmon apartment, although the cause of the ignition of the escaping

gas in the Reedy apartment, was not in itself a risk insured against, and it was not the proximate cause of appellant's loss. When an explosion is caused by an explosive substance coming in contact with a friendly or innocent fire, as in the instant case, the effects of the explosion, no fire ensuing, are attributed to the explosion as the proximate cause, and not to the fire. See *New Hampshire Fire Ins. Co. v. Rupard et al.*, supra. See, also, *Phoenix Ins. Co. v. Greer*, 61 Ark. 509, 33 S.W. 840; *Transatlantic Fire Ins. Co. v. Dorsey*, 56 Md. 70, 40 Am. Rep. 403; *Heuer v. Northwestern National Ins. Co.*, 144 Ill. 393, 33 N.E. 411, 19 L.R.A. 594; *Briggs v. North American Mercantile Ins. Co.*, 53 N. Y. 446.

Appellant cites *Apfelbaum & Neff v. Insurance Company of North America*, 98 Pa. Superior Ct. 335. In that case, in an opinion by Judge TREXLER, this court held that there was sufficient evidence to enable the jury to make the distinction as to whether the explosion occurred independently of the fire, or whether the fire preceded it and caused it, and that the jury could legitimately draw the inference from the testimony that the fire preceded the explosion. There was the testimony of two witnesses as to the presence of smoke in the building some time prior to the explosion; there was an absence of any evidence showing that the heater, a "friendly" fire, could have caused the fire; and there were pieces of wood 3 by 4 inches, burned through, scattered about by the explosion. There is no analogous testimony found in the case at bar. Appellant gave no evidence of smoke before the explosion, or any other facts from which it might be legitimately inferred that prior to the explosion there was a preceding hostile fire on the premises of appellant. Although, as said by Judge TREXLER in the Apfelbaum case, it is not required that the testimony should demonstrate that there was a fire preceding the explosion, nevertheless the evidence must warrant a legitimate inference that such preceding

hostile fire did exist. Other questions raised by appellees, in view of our conclusion, need not be considered.

Assignments of error are overruled.

Judgments are affirmed.