## Mitchell et ux., Appellants, *v.* Globe & Republic Insurance Company of America.

Argued October 1, 1942. Before KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*Harold B. Borneman,* of *Peck, Borneman & Young,* for appellants.

*G. A. Troutman,* of *McWilliams, Wagoner & Troutman,* for appellee.

OPINION BY KELLER, P. J., November 18, 1942:

Action on a standard fire insurance policy insuring the plaintiffs against all direct loss or damage by fire

to their dwelling house, including, *inter alia,* the heating apparatus and appurtenances thereto.

Plaintiffs averred that a fire occurred at said premises on September 25, 1941, by which they sustained damage in the amount of $479, in the manner following: The heating system in said insured dwelling had been drained of water to prepare for minor repairs; the control switch of the oil burner heating unit attached to the furnace in the basement had been placed in the "off" position; said switch was turned to the "on" position and left so by the negligence of a workman employed by an independent contractor, or by a person unknown to and unauthorized by the insured and without their knowledge and consent; a drop in temperature after the plaintiffs had retired for the night caused the automatic lighting of fire in said furnace—by thermostat control—as a result of which said furnace and its component parts were damaged, requiring a replacement outlay in the sum of $479.

The defendant filed an affidavit of defense, raising a question of law in lieu of demurrer, under section 20 of the Practice Act of 1915, P. L. 483, and asserting that the plaintiffs' statement was insufficient to sustain the action, (1) because it failed to aver a direct loss or damage by fire within the contract of fire insurance; (2) because the damage to the oil-burning heating unit was due to the lack of water in the boiler when the automatic ignition system lighted the burner; and (3) because the damage to the heating equipment was not caused by a 'hostile' fire but resulted from the ordinary use of said burner combined with the negligence of the employee of the independent contractor. Said fire was not averred in the statement to have extended beyond or outside the heating system.

The court, being of opinion that the plaintiffs' statement of claim showed on its face, as a question of law, that they were not entitled to recover, (*Rhodes v.*

*Terheyden,* 272 Pa. 397, 116 A. 364) and that it could not be cured or remedied by amendment (*Greene County v. Center Twp.,* 305 Pa. 79, 86, 157 A. 777), entered judgment for the defendant. Plaintiffs appealed. The judgment will be affirmed.

There are no appellate court decisions in this Commonwealth which, on precisely the same state of facts, rule the present question. But we are of opinion that the conclusion we have reached is implicit in *Collins v. Insurance Co.,* 9 Pa. Superior Ct. 576; *Apfelbaum & Neff v. Insurance Co. of North America,* 98 Pa. Superior Ct. 335; *Tannenbaum v. Fire Ins. Co.,* 127 Pa. Superior Ct. 278, 193 A. 305, and the authorities cited and relied on in those cases. In other jurisdictions the cases of *American Towing Co. v. German Fire Ins. Co.,* 74 Md. 25, 21 A. 553, and *McGraw v. The Home Ins. Co. of New York,* 93 Kan. 482, 144 P. 821, are very helpful because of the similarity of their facts to this one; in both those cases the loss or damage for which recovery was sought was confined to the steam boiler or heating system, from a fire within it, and recovery was denied. In the former, the Court of Appeals of Maryland affirmed an instruction given at the request of the defendant to the effect that, "if the jury should find from the evidence that the damage to the interior of the boiler of the steam-tug was occasioned by the overheating of the boiler from the furnace fires, owing to the absence of water in the boiler, and was not the result of any fire outside of said furnace, then such damage was not the result of such fire as was contemplated by the parties under the policy of insurance, as one of the perils insured against, and that the plaintiff was not entitled to recover for such damage."

All of the cases stem back to the leading English case of *Austin v. Drew,* 4 Camp. 360, 6 Taunt. 436. The facts are most clearly stated in 6 Taunton, in the report of the argument on the motion for new trial. The

case, in effect, held that a policy insuring materials and utensils against loss or damage by fire did not cover damage to sugar in an eight-story sugar refinery caused by *excess heat* due to the negligent closing of a vent or register at the top of a chimney, which shut off the chimney flue and caused smoke and excess heat to come out of registers placed in the chimney, at the different floors of the building, for the purpose of heating them. As stated in the report in 6 Taunton, "The only damage done to the sugar was from the heat. There was no fire in the building that ought not to be there. Nothing was on fire that ought not to be on fire." The damage was caused by the shutting of a flue which should have been open when the fire was burning. In the report in 4 Camp. 360, Chief Justice GIBBS placed his decision on the fact that the *excess heat* that damaged the sugar came from the chimney or flue which was designed and intended to carry away the flame and heat generated by the fire used for heating the pans, and was excessive only because an employee forgot to open the vent in the chimney by which "the smoke ought to have escaped and the heat to have been tempered". His colloquy with a juror shows that if the fire and flame had not been confined to the chimney, but had ignited and burned any of the insured materials or utensils, a recovery would have been permitted.

In some of the cases the distinction has been drawn between a 'hostile' fire, the damage from which is covered by the insurance policy, and a 'friendly' fire, which is not covered. These words—'hostile' and 'friendly'—are not contained in the policy and are not in all cases applicable, for a 'friendly' fire may become 'hostile' if it causes something to ignite and burn outside of the furnace, stove, heater, etc., used for containing the fire, resulting in loss or damage to any of the insured property.

The principle properly deducible from the cases is that if the fire is confined wholly within the furnace, stove, heater, etc., which was installed for the purpose of having a fire within it, loss or damage which may occur only to the heating appliance or device installed to contain the fire, by over-heating, or lack of water, or other improper handling, is not covered by the insurance policy; whereas if it results in ignition and fire outside the heating appliance, causing loss or damage *to any insured property,* such loss or damage is recoverable under the policy.

While it is true that in the present case, the plaintiffs did not intentionally start a fire in the furnace on the night in question, they installed and set a thermostat, which they knew would automatically start a fire when the temperature fell to a certain level, if the switch controlling the supply of oil to the furnace was 'on'; and the installation of such an automatic control device does away with any intentional lighting of the furnace. In any event, the question is not, was the fire intended? It is rather, was the fire confined within the appliance which was intended to hold or contain the fire? If it was, the damage which may have been done to the appliance itself, by the fire contained within it, is not loss or damage within the insurance contract of the policy.

We have examined all the cases cited by appellant and do not find in them, when the facts are understood, any conflict with the principle above cited. However, if any cases from foreign jurisdictions are not in accord with it, they are not approved or followed by us.

Judgment affirmed.