## Smail *v.* Flock, Appellant.

Argued March 14, 1962. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Daniel J. Snyder,* with him *Avra N. Pershing, Jr.,* and *Pershing and Snyder,* for appellant.

*Joseph M. Loughran,* with him *Loughran & Loughran,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, April 17, 1962:

LeRoy G. Smail was killed when the automobile which he was driving collided with a tractor-trailer operated by Floyd Lottman employed by Harry G. Flock, t/a Flock Brothers, the defendant in this case. In Smail's car were his two daughters Mrs. Grace Weightman and Mrs. Martha Nye, who, through their individual husbands, brought suits in trespass against the defendant and recovered verdicts, which have not been contested. Accordingly, their cases are not before us for review. William G. Smail, administrator of the estate of LeRoy G. Smail, brought wrongful death and survival actions against the defendant, and the jury returned verdicts in favor of the plaintiff in those actions in the sums of $17,913.35 and $24,466 respectively.

In the court below the defendant moved for a new trial, alleging trial errors and excessive verdicts. The motion was refused and the defendant appealed to this Court.

The tragic accident happened as follows. On January 11, 1960, LeRoy G. Smail, a 61-year-old dairy farmer was proceeding southwardly on the Mt. Pleasant-Greensburg Road in Westmoreland County, the

weather dry, clear and cold. When he reached a point known as Lynch's Curve, made up of a sharp, almost 90-degree turn, the defendant's tractor-trailer, moving forward in the opposite direction, failed to properly negotiate the curve, crossed over to the Smail side of the road and struck his automobile with such force that the tractor-trailer, which was loaded with 52,000 pounds of pea coke (also referred to as coke ashes) overturned onto the Dodge sedan, burying it in an avalanche of ashes. One witness testified that some of the ashes were thrown 58 feet into a yard adjoining the road, also that the tractor-trailer made marks in the road for 25 feet, all indicating that the heavy vehicle, as it endeavored to round the curve, was traveling at a high rate of speed. Smail was smothered to death in the flood of ashes and the two women passengers were seriously injured.

Since the collision occurred on the defendant's wrong side of the road, he was confronted with the evidentiary burden of explaining what his truck was doing where, under the circumstances indicated, he had no right to be. The driver of an automobile whose vehicle, at the time of an untoward encounter on the highway, is shown to be on its wrong side of the thoroughfare, is ipso facto tainted with negligence, and it devolves upon him to wipe away that taint with evidence which satisfies a jury that he was not at fault.[1] The defendant Flock attempted to accomplish that cleansing by producing a person, A. J. McKelvey, described as a heavy equipment appraiser, to show that the defendant's truck capsized because of a defective or broken spindle.

Defendant's counsel made his offer in the following language: "[W]e expect to prove that Mr. McKelvey made an examination of this tractor-trailer immediate-

---

[1] *Nixon v. Chiarilli*, 385 Pa. 218, and other cases there cited.

ly following the accident . . . that he discovered there was a broken spindle, left spindle, on the front of the tractor which could very properly account for the truck turning over and the significance of which is that if this occurred while or before the car went around this turn it would explain why this vehicle turned over."

The plaintiff's attorney objected to the offer and the objection was sustained by the court. The defendant now argues that this was reversible error. It was not error. The offer, if accepted, would have scattered irrelevancies over the issue in the case as widespreadly as the overturned truck deposited ashes over the road. The offer carried so many conjectures, speculations and hypotheses that any conclusion based on the answers would have been entirely extraneous to the law of cause and effect. In the first place, it was not asserted that the broken spindle, if there was one, accounted for the overturning of the truck, nor even that the spindle was broken before the tractor-trailer entered into the curve. The offer did not exclude the possibility that the spindle snapped because of the intolerable strain placed upon it as the result of the centrifugal force generated as the truck hurled itself into the turn at a high rate of speed. Nor did it exclude the possibility that the spindle may have broken when the truck was righted after the accident, or when it was taken off the highway. Justice MAXEY in the case of *Sweeney v. Blue Anchor Bev. Co.*, 325 Pa. 216, affirmed the well-known rule that, " 'No matter how skilled or experienced the witness may be, he will not be permitted to guess or to state a judgment based on mere conjecture.' "

Moreover, expert testimony, to have any evidentiary value, must state with some positiveness that a given state of affairs is the result of a given cause. It is not enough to say that something *could* have happened. Anybody can guess. Expert testimony must assert that

it is the professional opinion of the witness that the result in question came from the cause alleged.[2] The lower court properly excluded the proffered testimony of McKelvey.

Then the defendant complains that the trial judge erred in permitting certain testimony with regard to the earning capacity of the deceased Smail, who was a dairy farmer deriving his principal income from selling milk. He owned a well-equipped farm of forty acres and in addition rented fifty acres from adjoining farms, thus making a total of ninety acres utilized by him in his business of producing and vending milk. His herd consisted of 28 cows, plus a bull. His son helped him part time, but he, LeRoy Smail, had no other interests but those which involved raising oats, hay and corn for his cows, caring for them, milking them and marketing their yield. Although 61 years of age, he was in excellent health, stood six feet high, and weighed 200-210 pounds.

The decedent did practically everything necessary to operate his large establishment except to keep records of his finances. In consequence, at the trial, the plaintiff found it necessary to call witnesses to testify orally to the earning capacity of the decedent. Boyd Bennet, in illustrating the volume of business done by Smail, testified that during the month of January, 1959 he acquired from him 15,759 pounds of milk; and during the month of May 14,023 pounds of milk. Harry McChesney, who lived on a farm all his life and at the time he appeared in court was 75 years of age, testified that in his opinion the fair and reasonable value of Smail's services in running and operating his dairy farm would be from $400 to $450 a month. John Millen and William Freeman, who were also dairy farmers, testified to the same effect.

---

[2] *McCrosson v. Phila. Rapid Transit Co.*, 283 Pa. 492.

154

The measure of a decedent's loss is what he "would have probably earned by his intellectual or bodily labor in his business or profession during the residue of his lifetime." *P. R. R. v. Butler,* 57 Pa. 335.

How are those losses to be calculated? Obviously by the best evidence which is available. Justice BELL, now Chief Justice, said in *Getz v. Freed,* 377 Pa. 480, 485: "In Betterman v. American Stores Co., 367 Pa. 193, 80 A. 2d 66, this Court, quoting from Lach v. Fleth, 361 Pa. 340, 352, 64 A. 2d 812, said (p. 207): ' "The law does not require that proof in support of claims for damages or in support of claims for compensation must conform to the standard of mathematical exactness. In Western Show Co., Inc. v. Mix, 308 Pa. 215, 162 A. 667, we held that evidence in support of a claim for damages *was sufficient 'if it afforded a reasonably fair basis'* for calculating the plaintiff's loss. . . . If the facts afford a reasonably fair basis for calculating how much plaintiff is entitled to such evidence cannot be regarded as legally insufficient to support a claim for compensation." ' " (Emphasis in Chief Justice BELL's Opinion).

In discussing the ascertainment of damages in a case involving an architect's delay in discharging his duties, this Court said: "While damages in such case cannot be based on a mere guess or speculation, yet, where the amount may be fairly estimated from the evidence, a recovery will be sustained even though such amount cannot be determined with entire accuracy." (*Osterling v. Frick,* 284 Pa. 397)

In *Hoober v. New Holland W. Co.,* 43 Pa. Superior Ct. 262, 266, the Superior Court said: "Where it is proved that damage has resulted from an injurious trespass and the only uncertainty is as to the exact amount thereof such uncertainty is not ordinarily ground for refusing to allow any damage at all if the evidence furnish a basis from which reasonable calculation can be made."

There can be no doubt that the evidence in this case as to the value of the decedent's services furnished a reliable basis from which a reasonable calculation could be made. Justice is not to be denied in any case because proof is difficult. The purpose of law is to apply legal principles to facts and not to tailor facts to legal principles. What is reasonable and fair to a mind open to conviction is relevant and proper in the ascertainment of earning power. There are some gainful callings which seem to defy bookkeeping precision, and a rural farmer's business run in the old-fashioned, nonmechanized fashion could well fall within that classification.

Given the integrity of the person testifying, conceding his knowledge of the business for gainful occupation in issue, accepting his capacity to reason logically and correctly from established premises, it would be unjust to exclude that person's testimony because he might not be able to express with the precision of a comptometer the exact value of a decedent's earning capacity.

The defendant also complains that the verdicts were excessive. In disposing of this feature of the case, the lower court said: "The potential earning power of an individual with a life expectancy of 13.88 years has been determined by the life expectancy tables, and with an earning capacity of $400.00 a month would result in a figure greater than $60,000.00. This would be without considering pain and suffering. Again assuming that a man of the deceased's capabilities would have earned, within the remaining portion of his lifetime, a sum in excess of $60,000.00, it could reasonably be considered that a verdict in behalf of the wife, namely in a Wrongful Death Action, of approximately $18,-000.00, is not excessive . . .

"Considering all the circumstances of the case, the amount, although large, was not so excessive as to

make this Court feel that a new trial should be granted or that the verdicts should be reduced."

We are satisfied that the Court did not err in this conclusion.

Judgment affirmed.