573 A.2d 541

**PEERLESS DYEING COMPANY, INC.**

v.

**INDUSTRIAL RISK INSURERS, Appellant.**

**PEERLESS DYEING COMPANY, INC., Appellant,**

v.

**INDUSTRIAL RISK INSURERS.**

Superior Court of Pennsylvania.

Argued Oct. 13, 1989.

Filed Feb. 28, 1990.

Reargument Denied May 9, 1990.

Stephen A. Cozen, Philadelphia, for appellant (at 3249) and appellee (at 3308).

Daniel L. Thistle, Philadelphia, for appellant (at 3308) and appellee (at 3249).

Before CAVANAUGH, OLSZEWSKI and HOFFMAN, JJ.

HOFFMAN, Judge:

These cross-appeals are from the judgment below, which was entered following a jury verdict in favor of appellee. The judgment arose from an action instituted by appellee, Peerless Dyeing, against its business insurer, appellant Industrial Risk Insurers, in which appellee sought to collect for property damage and business interruption damages that it claimed resulted from an accident at its dyeing plant. in Philadelphia. The jury's verdict in appellee's favor awarded damages of $407,000.00 for property damage and $1,130,000.00 for business interruption.[1]

---

1. The verdict was later molded to allow for a setoff from the city and to award appellee interest on the property award. The molded award was as follows:

In its appeal at (No. 3249 PHL 87) appellant's primary contention is that the trial court should have directed judgment in its favor with regard to both the property damage claim and the business interruption claim. More specifically, appellant contends that the trial court should have ruled as a matter of law that, under the unambiguous terms of the contract, appellee was not entitled to recover for property damage because there was neither (a) damage caused by a "named peril" nor (b) an accident to an "insured object." In addition, appellant contends that business interruption insurance is not available because such recovery is derivative of the property damage recovery and necessarily must fail. For the reasons set forth below, we agree that the policy provisions at issue are unambiguous and, as a matter of law, do not allow recovery for the damages suffered by appellee; accordingly, we reverse the judgment below, and enter judgment in favor of appellant.[2]

On August 13, 1981, a city water main broke in Philadelphia and flooded the premises of appellee's factory. At the time of the water main break, appellee had insurance contracts with appellant. Under the contracts, appellee was insured to $6,666,000.00 for damage to property and to $1,080,000.00 for business interruption loss. Appellee filed a claim with appellant seeking coverage; appellant denied the claim stating that there was neither damage from a named peril, as required by the contract, nor an accident to an insured object. In February 1982, appellee filed the

| | |
|---|---|
| Property Damage | $ 334,180.00 |
| Interest to 11/25/85 | $ 85,916.30 |
| Business Interruption | $ 927,820.00 |
| TOTAL | $1,347,916.30 |

**2.** In appellant's "Statement of The Questions Involved," it lists nine issues, the first three of which concern the court's refusal to direct judgment in its favor. Because of our disposition of this appeal, we need not address appellant's remaining claims.

We should note that appellant's statement of questions is in clear violation of our Rules of Appellate Procedure, in that it covers three pages and some forty-two lines. See Pa.R.A.P. 2116(a). Despite this disregard of our Rules, we have carefully considered those claims necessary to our disposition of this appeal.

instant action against appellant. On November 15, 1985, the case proceeded to trial. The jury returned a verdict in favor of appellee, finding that (1) there was an accident to a covered object; (2) there was damage caused by a named peril; (3) there was coverage under the policy; and (4) the damages amounted to $407,000.00 for property damage and loss and $1,130,000.00 for business interruption. The parties filed post trial motions which were denied and the jury's verdict was reduced to judgment. These cross-appeals followed.

On its appeal, appellant challenges the recovery under both the property damage policy and the business interruption policy. We shall consider these claims seriatim.

## I. PROPERTY DAMAGE

### A. DAMAGE RESULTING FROM "NAMED PERIL"

Appellant first contends that the court erred in not finding as a matter of law that the damage to contents of appellee's factory by flooding did not constitute damage caused by a "named peril" under the property damage clause of the contract. The law of Pennsylvania requires that an insurance policy be construed in accordance with its plain, common, and ordinary meaning. Courts "cannot rewrite the terms of the policy or give them a construction in conflict with the accepted and plain meaning of the language used." *Adelman v. State Farm Mut. Auto. Ins. Co.*, 255 Pa.Super. 116, 123, 386 A.2d 535, 538 (1978) (citing *Pennsylvania Manuf. Assoc. Ins. Co. v. Aetna Cas. & Surety Ins. Co.*, 426 Pa. 453, 233 A.2d 548 (1967)); *see also Monti v. Rockwood Ins. Co.*, 303 Pa.Super. 473, 476, 450 A.2d 24, 25–26 (1982). When a word or phrase is specifically defined within the policy, that definition controls in determining the applicability of the policy. *See Great Am. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 412 Pa. 538, 194 A.2d 903 (1963). Moreover, it is the duty of the *court* to interpret an unambiguous provision while interpretation of ambiguous clauses may properly be left to a jury. *See*

*Koval v. Liberty Mut. Ins. Co.*, 366 Pa.Super. 415, 423, 531
A.2d 487, 491 (1987).

The property damage insurance policy in the instant case
included a "named perils" clause which covered appellee's
factory. Under this provision, the jury awarded $180,800.00
for property damage in appellee's factory.[3] The only argu-
ably applicable portion of the property policy is the clause
concerning "fire protective equipment." This provision in-
sured against direct loss by:

> water or other substance discharged from within any part
> of the fire protective equipment for the premises de-
> scribed herein or for adjoining premises;

*See* Property Damage Policy at Property Damage No Coin-
surance at 5, para. D (R.R. at 43A). The policy went on to
define fire protective equipment as follows:

> The term "fire protective equipment" *includes* tanks,
> water mains, hydrants, or valves, and any other equip-
> ment whether used solely for fire protection or jointly for
> fire protection and for other purposes *but does not in-
> clude:*
>
> * * × * :: *
>
> (2) any underground water mains or appurtenances
> located outside of the described premises and forming a
> part of the public water distribution system;

*Id.* (emphasis supplied). At trial, no evidence was intro-
duced to suggest that the water main that burst was any
part of the fire protective equipment in the plant. Indeed,
it is undisputed that the flooding of appellee's plant on
August 13, 1981 was caused by the break of an under-

---

**3.** This amount was exactly what appellee had requested. The award
can be broken down as follows:

| | |
|---|---:|
| dye stuffs | $ 74,500 |
| customer goods | $ 86,000 |
| packaging material | $ 5,250 |
| driveway | $ 3,550 |
| oil | $ 10,500 |
| trucks | $ 1,000 |
| TOTAL | $180,800 |

ground water main maintained by the City of Philadelphia outside the premises. *See* N.T. November 20, 1985 at 4.48, 51; *see also* N.T. November 18, 1985 at 38. Appellant contends that this fact alone precludes coverage under the unambiguous language of the named peril policy because the source of the water was not a named peril and, indeed, specifically *was excluded* from coverage. Despite the explicit language in the contract quoted above, appellee argues that the jury properly returned a verdict in its favor because (1) the exclusion of public water mains was unconscionable; (2) appellee's attention was not directed to the provision that would preclude the coverage; and (3) appellee reasonably expected to be covered for this type of occurrence under his policy. Appellee's claims are lacking in merit.

 Appellee first argues that the insurance contract was unconscionable because it purported to give coverage in one portion and take it away in another.[4] In *Koval v. Liberty Mut. Ins. Co., supra,* our Court noted that, for a contract to be unconscionable, the court must find that (1) the party claiming unconscionability lacked a reasonable choice whether to accept the provision in question and (2) the challenged provision unreasonably favored one party to the contract. *See id.,* 366 Pa.Superior Ct. at 423–24, 531 A.2d at 491. Here, the evidence adduced at trial establishes neither part of this test. The language quoted above clearly states that underground water mains not on appellee's property are not covered under the policy. Importantly, we note that appellee *chose* to purchase this named perils insurance even though it had the option of purchasing a policy with broader coverage. *See* N.T. November 22, 1985 at 6.79–6.80.[5] Because the language about coverage is

---

4. The trial court apparently accepted an argument similar to this, as it explained that the reason it submitted the issue to the jury was that the contract was ambiguous because it purported to give coverage in one instance and remove it in another.

5. At trial, testimony revealed in relevant part:
 Q [counsel for appellant]: Now, Mr. Borwiec [Claims Manager for one of the companies that comprise appellant], looking at P–20, as I understand it, Mr. Borwiec, is an interoffice memo, interoffice with IRI; correct?

clear and explicit and appellee had an option to purchase greater coverage, we cannot conclude that appellee did not have a reasonable choice whether to accept the provision. Moreover, we cannot find that the limitation clause unreasonably favors appellant. Appellant appears to have attempted to limit its coverage to perils that are within appellee's dominion and control. This was reasonable because appellant also included in the policy a right of appellant to inspect the premises, in an attempt to minimize the risk of named perils occurring. The mere fact that the contract does not provide the broadest possible coverage does not render the contract unreasonably one-sided. Accordingly, appellee's unconscionability argument must fail.

■ Appellee's second argument would seem to be that, when a policy has exclusions, the insurer has an affirmative burden to show that the insured was aware of the exclusion

A: Yes.

Q: Why don't you read for the jury that whole memo.

A: "A forty-two-inch main rupture in the area of this plant yesterday and caused considerable damage to this risk.

"Attached are two letters dated May 19th, 1981, regarding the renewal of May 15th, 1981, *where we offered the DIC coverage which was not at the time accepted.*

"I am also including a copy of our property proposal.

"The insured called this office and asked if there was coverage and he was advised that since there was no damage by a named peril, there was no coverage and *that he had been offered the DIC and had not as yet accepted.*

"In accordance with your instructions, we are not conducting any loss investigation, but we did have a man at the plant to supervise the impairment."

Q: Okay. First of all, Mr. Borwiec, it indicates that in May *the insured was offered DIC coverage which was not accepted.*

A: Yes. That's what it says.

Q: And what is that?

A: *Difference In Conditions is a generality, it's an extension of a property policy. It will provide additional coverage beyond what the policy has said it covers.*

Q: *And this coverage that was offered and not accepted; right*

A: Yes.

Q: Would DIC coverage cover water damage from a water main that's a block away to the plant?

A: To my knowledge it would provide coverage for water damage.

N.T. November 22, 1985 at 6.79–6.80 (emphasis supplied).

and its effect. *See Hionis v. Northern Mut. Ins. Co.,* 230 Pa.Super. 511, 327 A.2d 363 (1974) (insurer failed to offer proof of insured's awareness and understanding of policy exclusions; therefore, policy construed in favor of insured). Our Supreme Court has specifically rejected this argument in *Standard Venetian Blind Co. v. American Empire Ins.,* 503 Pa. 300, 306, 469 A.2d 563, 567 (1983), holding that when exclusions are clearly stated in a policy, the insured is bound by the terms of the contract it signed. *Id.; see also Kershner v. Prudential Ins. Co.,* 382 Pa.Super. 95, 100, 554 A.2d 964, 966 (1989). In light of *Standard Venetian* and its progeny, and our conclusion above that the exclusion was explicitly stated, appellee clearly cannot avoid the exclusion simply because appellant did not further emphasize it during negotiations.

Appellee's final argument is that the construction urged by appellant would defeat its reasonable expectation under this policy. As we have already noted, when the language of a contract is clear, the court must apply the language of the contract as written and cannot rewrite the terms of the policy. *See Adelman v. State Farm Mut. Auto. Ins. Co., supra.* Moreover, the record reveals that appellant had an opportunity to purchase broader coverage, but instead chose to purchase the policy at issue. *See* N.T. November 22, 1985 at 6.79–6.80 (quoted above at n. 5). Appellee cannot now complain of its own informed choice. Accordingly, this argument must also fail.

In summary, we agree with appellant that the terms of the policy are clear and unambiguous, and specifically excluded coverage for the type of loss occasioned here. Thus, the trial court should have directed a verdict for appellant in this claim. Accordingly, we vacate the award of $180,800.00 for property damage resulting from a "named peril."

## B. DAMAGE FOR "ACCIDENT" TO "INSURED OBJECT"

Appellant next contends that the trial court should have directed a verdict in its favor under the accident

portion of the property policy because appellee failed to sustain its burden of showing that an accident occurred to an insured object. Under this provision the jury awarded $226,200.00 for repair and replacement of the boilers.[6] Appellee, on the other hand, asserts that it established that an accident occurred to an object specifically a boiler, through the testimony of its expert witness, Nick Manfra, the plant manager. In order for there to be coverage under this provision of the contract, the "accident" must be to an "insured object." The policy defines an "object" as:

> any boiler, fired vessel or electric steam generator designated and described in the schedule and shall also include (1) any steel economizer used solely with such Object; (2) as respects any such Object which is a steam boiler, any piping on the premises of the insured, or between parts of said premises, with valves, fittings, traps and separators thereon, which contain steam or condensate thereof, generated in whole or in part in such boiler but not including any such piping which forms a part of any other vessel or apparatus; and (3) respects any such Object which is a steam boiler, any feed water piping between such boiler and its feed pump or injector; but Object shall not include (a) any part of such Object which does not contain steam or water; (b) any boiler setting; (c) any insulating or refractory materials; (d) any piping which does not contain steam or condensate thereof; (e) any piping not on the premises of the insured, used to supply any premises not owned by, leased by or operated under the control of the insured; (f) any other piping, radiator, coil, vessel or apparatus except as included in sections (1), (2), and (3) above; (g) any reciprocating or rotating machine; nor (h) any electrical apparatus.

**6.** This amount was just $58.00 less than what appellee had requested. The award can be broken down as follows:

| | |
|---|---|
| repairs to boilers | $ 26,200.00 |
| replacement of boilers | $200,000.00 |
| TOTAL | $226,200.00 |

*See* Property Damage Policy at Boiler and Machinery Definitions Special Provisions at 1 (R.R. at 50A). The policy then defines an "accident" as:

> a sudden and accidental breakdown of the object, or a part thereof, which manifests itself at the time of its occurrence by physical damage to the Object that necessitates repair or replacement of the Object or a part thereof; but Accident shall not mean (a) depletion, deterioration, corrosion, or erosion of material; (b) wear and Tear; (c) leakage at any valve, fitting shaft, seal, gland packing, joint or connection; (d) the breakdown of any vacuum tube, gas tube or brush; (e) the breakdown of any electronic computer or electronic data processing equipment; (f) the breakdown of any structure or foundation supporting the Object or any part thereof; (g) an explosion of gas or unconsumed fuel within the furnace of any object or within the passages from the furnace of said object to the atmosphere; nor (h) the functioning of any safety device or protective device.

*Id.*

Manfra's testimony was the only testimony introduced to prove that there was an accident to an object. Appellee cites to a portion of Manfra's testimony where he stated that, in his opinion, water from the water main break caused damage to the boilers. *See* N.T. November 18, 1985 at 2.60. Manfra, however could not specify the nature of the damage. Thus, when questioned about what was damaged, Manfra testified, "I would *guess* it (damage) would be internal." *Id.* at 2.71 (emphasis supplied). He further testified that he had hoped that someone would come in and examine the situation and tell him what had happened because he did not have the type of equipment to detect it. *See id.* at 2.71–72. Later on Manfra again admitted that he could not tell what happened, and did not know specifically what was wrong with the boilers. Indeed, he stated that the problem could be damage to the boiler or to anything *connected* with the boiler, including the shell, control panels, or electrical lines. *See id.* at 2.74–77, 2.85–86. Despite

the fact that Manfra was qualified by appellee and the court as an expert, he candidly expressed his inability to pinpoint what went wrong. For example, when counsel questioned Manfra about whether the damage occurred to the boilers or to the refractories (which were excluded from coverage), the following exchange occurred:

Q [appellant's counsel]: ..., do you attribute those problems to the mechanical works of the boilers rather than problems to the refractories?

A [Manfra]: We never got the same intensity of heat out of the boiler again. *I'm not a boiler mechanic. I can't tell you what happened.* Something happened to it.

Q: *But you don't know what?*

A: *No, I don't.* You know there's something wrong when you're burning more gas and producing less steam.

Q: Did that have something to do with the brick?

A: Could be the refractories, boilers.

Q: *Could be anything?*

A: *Anything connected with the boiler.*

*Id.* at 2.89–90 (emphasis supplied). Moreover, Manfra never had anyone come in and assist him in identifying the problem. *See id.* at 2.71, 2.75, 2.77. In addition to Manfra's inability to offer an opinion on the nature of the damage, there is no question that Manfra never stated that he believed "to a reasonable degree of certainty" or that "in his professional opinion" there was an accident to the boiler. Instead, Manfra's testimony unequivocally establishes that he had neither the equipment nor the expertise ("I'm not a boiler mechanic") to form an opinion on the nature of the damages. In short, the jury was left to speculate with regard to both (1) whether the damage occurred to the boiler itself or another part of the structure, and (2) the nature of the damage.

It is settled that, to be competent, expert testimony must be stated with reasonable certainty. *See McMahon v. Young,* 442 Pa. 484, 276 A.2d 534 (1971); *see also McCann v. Amy Joy Donut Shops,* 325 Pa.Super. 340, 472 A.2d 1149 (1984). Here, Manfra's failure to state an opinion with such

certainty need not be fatal if we could look to his testimony in its entirety and find that it expresses reasonable certainty. *See McCann v. Amy Joy Donut Shops, supra* (citing *Hussey v. May Department Stores, Inc.,* 238 Pa.Super. 431, 357 A.2d 635 (1976)). However, that does not appear possible in this case. Although Manfra offered a general opinion that the boilers had been "damaged," his testimony unequivocally established that he never examined the boilers to determine what the problem was nor did he call in anyone else to examine the boilers. In addition, he admitted that he could not determine whether the damage was to the boilers or to something connected with them. As our Supreme Court stated in *Smail v. Flock,* 407 Pa. 148, 180 A.2d 59 (1962), "it is not enough to say that something could have happened. Anybody can guess." *Id.,* 407 Pa. at 152, 180 A.2d at 61. On this record, appellee's only evidence on supposed "damage" to an "insured object" (the boilers) amounted to an unfounded guess.[7] Because appellee did not produce sufficient evidence to create a jury question about whether there was an accident to an insured object, we agree with appellant that the issue should not have been submitted to the jury. Accordingly, we vacate the jury award of $226,200.00.

## II. BUSINESS INTERRUPTION LOSSES

Appellant next contends that appellee cannot recover for business interruption loss because such coverage is available only if there is recovery for property damage. The business interruption policy states that in order for the policy to apply, there must be either "damage to or destruc-

---

7. It is undisputed that after the flood, the boilers, for whatever reason, were not performing as efficiently as before. Appellee's whole case therefore, turned on the question of whether the flood caused damage to the insured object, the boilers. Manfra himself indicated that he expected a professional examination to be done, albeit by the insurers, to pinpoint the damage to the boilers. In light of the essential nature of testimony to establish injury to the boilers as a result of the flood, we are at a loss to explain why appellee's counsel did not have an examination of the boilers done and present expert testimony on this crucial issue.

tion of real or personal property ... by the perils insured against during the term of this policy" or "loss caused solely by an accident occurring while this endorsement is in effect to an Object designated and described in the schedules and endorsements." *See* Business Interruption Insurance Policy at 1 of Form A, 1 of Boiler and Machinery Time Element Endorsement (R.R. at 13A, 22A). Because we already have concluded that (1) the clear and unambiguous language of the policy precludes recovery under the named perils portion of the policy and (2) appellee did not sustain his burden of showing an accident to an object, the factual predicate for triggering the business interruption does not exist. Accordingly, we vacate the jury award of $1,130,-000.00 for business interruption loss.[8]

## CONCLUSION

The trial in the instant case lasted seven days and resulted in over 550 pages of testimony. The evidence demonstrated that a water main break flooded appellee's plant, put it out of business for a time, and may have contributed to appellee's eventual business failure. A close review of the evidence, however, reveals that appellee failed to demonstrate that the loss incurred resulted from a risk it had insured itself against. More specifically, we agree with appellant that, after extensively reviewing the trial testimony it is apparent that appellee failed to produce evidence sufficient to raise a jury question whether it had either (a) suffered damage resulting from a named peril or (b) sustained an accident to an insured object. Accordingly, we are constrained to reverse the judgment below, and enter judgment in favor of appellant.

**8.** On the cross-appeal (at No. 3308 PHL 87) appellee contends that (1) because appellant initially denied the business interruption claim, it is entitled to interest on the amount of the award and (2) the court should not have allowed a prior settlement with a Pennsylvania Municipality to be used as a setoff by the insurance carrier. Because of our disposition of appellant's claims, we need not address these issues related to the computation of damages.

Judgment reversed; judgment entered in favor of appellant.