670 A.2d 160

**Glen WEISMAN and Elliott Weisman, Individually and Trading as Weisman Investment, Appellees,**

v.

**The GREEN TREE INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 1, 1995.

Filed Jan. 17, 1996.

Thomas P. Bracaglia, Philadelphia, for appellant.

Joel D. Caney, Philadelphia, for appellees.

Before JOHNSON, HUDOCK, and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

Appellees Glen and Elliott Weisman own and rent property located at 13043 Blakeslee Court in Philadelphia. On November 15, 1992, one of their tenants at the Blakeslee Court address committed suicide with a shotgun. Appellees incurred $5,020.15 in damages for emergency cleanup, repairs and replacement of damaged property, and lost rent.

Since the Blakeslee Court premises were insured under a Limited Peril policy with appellant Green Tree Insurance Company, appellees notified appellant of the damages and of their intent to make a claim under their policy. When appellant refused to pay, appellees filed the instant suit.

Initially, the case went to arbitration, where a panel of arbitrators found in favor of appellees in the amount of the alleged damages, plus interest. On appeal to the trial court, the parties stipulated to the facts and submitted briefs on a single issue: "whether the 'explosion peril' provision of [the] insurance policy encompassed damages sustained as a result of a shotgun blast." Trial court opinion, 6/14/95 at 1. On February 6, 1995, the Honorable Marvin R. Halbert found that the policy provision did cover the alleged damages, and entered judgment in favor of appellees. This appeal followed.

Appellant now claims that the trial court erred in concluding that the explosion provision provided coverage for gunshot damages. A question regarding the interpretation of an insurance contract is a matter of law for the courts to decide. *E.g., Paylor v. Hartford Ins. Co.,* 536 Pa. 583, 585, 640 A.2d 1234, 1235 (1994). Our goal in interpreting an insurance contract is to ascertain the intent of the parties, as manifested by the language of the written policy agreement. *Id.* "When the policy language is clear and unambiguous, we will give effect to the language of the contract." *Id.* If the provisions of a policy are ambiguous, however, the ambiguous provision is "construed in favor of the insured and against the insurer, the drafter of the instrument." *Bateman v. Motorists Mut. Ins. Co.,* 527 Pa. 241, 244, 590 A.2d 281, 283 (1991).

■ We will not find a contract provision ambiguous simply because the parties do not agree upon the proper construction. *E.g., Ryan Homes, Inc. v. Home Indemnity Co.,* 436 Pa.Super. 342, 346, 647 A.2d 939, 941 (1994), *appeal denied,* 540 Pa. 621, 657 A.2d 491 (1995). Rather, "[a]n ambiguity exists only when a policy provision is reasonably susceptible of more than one meaning." *Id. See also Jefferson v. State Farm Ins.,* 380 Pa.Super. 167, 168, 551 A.2d 283, 284 (1988) (stating that a provision is ambiguous if reasonably intelligent persons could differ as to its meaning). Generally, courts should try to "read policy provisions to avoid ambiguities, if possible, and not torture language to create them." *Carpenter v. Federal Ins. Co.,* 432 Pa.Super. 111, 117–18, 637 A.2d 1008, 1011 (1994), *appeal granted,* 540 Pa. 576, 655 A.2d 508, *appeal denied,* 540 Pa. 592, 655 A.2d 982 (1995).

■ In the present case, the policy provision under scrutiny reads as follows:

**PERILS INSURED AGAINST**

We insure for direct physical loss to the property covered caused by a peril listed below unless the loss is excluded in the General Exclusions.

*     *     *     *     *     *

3. Explosion.

R.R. at 13a. The trial court found that the term "explosion," which was not defined in the policy, was ambiguous because it was reasonably susceptible to differing interpretations and could arguably encompass a shotgun blast. *See* trial court opinion, 6/14/95 at 3. Therefore, the court construed the provision in favor of appellees and held that their claimed damages were covered. Appellant asserts that the trial court erred because the term "explosion" was not ambiguous and clearly indicated that the parties did not intend to cover the discharge of a weapon. After careful review, we conclude that the trial court correctly interpreted this policy provision.

As defined in Webster's, the verb "explode" is defined in part as follows:

1: to burst forth with sudden violence or noise from internal energy: as **a:** to undergo a rapid chemical or nuclear reaction with the production of noise, heat, and violent expansion of gases ... **b:** to burst violently as a result of pressure from within....

Webster's Ninth New Collegiate Dictionary 438 (9th ed.1984). *See also Allen v. Insurance Co. of North America,* 175 Pa.Super. 281, 283, 104 A.2d 191, 193 (1954) (holding that the term "explosion" must be taken in its ordinary sense, i.e., as "a violent bursting or expansion, with noise."). Under this definition, it is at least arguable that a shotgun blast is a type of explosion. A shotgun certainly bursts forth with sudden violence and noise, and the burst is the result of internal energy. Hence, a broad reading of the term "explosion" could seemingly encompass a shotgun blast. *Cf. Allen,* 175 Pa.Super. at 283, 104 A.2d at 193 (finding damage caused by oil seeping from a storage tank was not caused by an "explosion" because the court found no evidence of sudden violence, noise, smoke, sprayed oil, or any type of detonation).

Admittedly, the term "explosion" is not commonly used to describe a shotgun blast. Nevertheless, we find that the term is susceptible to more than one meaning and that reasonably intelligent persons could differ as to whether a shotgun blast could be described as an explosion.[1] Therefore, we conclude that this policy provision, which simply states that "explosions" are covered perils, is ambiguous as it applies to shotgun blasts. *See Ryan,* 436 Pa.Super. at 346, 647 A.2d at 941 (defining an ambiguous policy provision); *Jefferson,* 380 Pa.Super. at 168, 551 A.2d at 284 (same).

Since the explosion provision in the policy is ambiguous, we must construe it against appellant, the insurer. Using this liberal interpretation, the trial court properly found that the shotgun damages to appellees' property were covered by their insurance policy.

---

1. We also find it interesting to note that a gun is more commonly described as being "fired," and the verb "fire" is defined in part as "to cause to explode." *See* Webster's Ninth New Collegiate Dictionary 465 (9th ed.1984).

We highlight the fact that many of the other perils in this policy were expressly limited, and appellant certainly had the ability to further limit its coverage for explosions. It is incumbent upon appellant, however, to make these limitations clear. *See Carpenter,* 432 Pa.Super. at 116, 637 A.2d at 1011 ("As the drafter of an insurance policy, it is incumbent upon the insurance company to delineate as precisely as possible the full extent of coverage."). Since we find that appellant did not clearly limit its coverage so as to exclude shotgun damages, we agree with the trial court's ruling in favor of appellees.

Order affirmed.

JOHNSON, Judge, dissenting.

The trial court first determined that the insurance policy was ambiguous and, accordingly, proceeded to construe the term "explosion" against the Green Tree Insurance Company (the Insurer). On appeal, my colleagues also find that the policy term is ambiguous because "reasonably intelligent persons could differ as to whether a shotgun blast could be described as an explosion." Majority opinion at 553. However, I am unable to conclude that the word explosion is ambiguous because that term has a plain and ordinary meaning within the context of a limited peril homeowner's insurance policy. Thus, I must respectfully dissent.

Glen and Elliott Weisman (the Landlords) purchased limited peril insurance coverage for their rental property from the Insurer. The insurance policy included coverage for direct physical loss to the property caused by an explosion. The Landlords sustained damage to the interior of the property as a result of a tenant's suicide by shotgun. The damages included expenses for emergency cleanup, repairs, replacement of damaged property, and lost rent. We are called upon to determine whether the trial court erred in determining the damage to real estate arising from the intentional discharge of a shotgun, resulting in the dispersal of shotgun pellets and the splattering of human tissue, blood and other liquids constitutes

a direct physical loss by explosion. I would conclude that it does not.

I believe the Majority's analysis is flawed to the extent that it finds the term explosion to be ambiguous based solely upon the fact that a shotgun blast could be encompassed within the meaning of that term, rather than considering whether the term explosion is capable of more than one meaning. The rules for determining whether an ambiguity exists are clear:

> The question of whether an ambiguity exists is to be determined by the Court as a question of law. 17A C.J.S. *Contracts* § 617 (1963). *Merriam v. Cedarbrook Realty, Inc.*, 266 Pa.Super. 252, 404 A.2d 398 (1978).
>
> A contract is ambiguous, if, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning. A contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends; and a contract is not rendered ambiguous by the mere fact that the parties do not agree upon the proper construction.
>
> 8 P.L.E. *Contracts* § 146 (1971).

*Commonwealth State Highway and Bridge Auth. v. E.J. Albrecht Co.*, 59 Pa.Cmwlth. 246, 251, 430 A.2d 328, 330 (1981); cited and followed in *Young by Young v. Equitable Life Assurance Soc'y*, 350 Pa.Super. 247, 252–53, 504 A.2d 339, 341 (1986); *Metzger v. Clifford Realty Corp.*, 327 Pa.Super. 377, 386, 476 A.2d 1, 5 (1984). Moreover, "[w]hen interpreting an insurance contract, words that are clear and unambiguous must be given their plain and ordinary meaning." *Ryan Homes, Inc. v. Home Indemnity Co.*, 436 Pa.Super. 342, 346, 647 A.2d 939, 941 (1994), *appeal denied,* 540 Pa. 621, 657 A.2d 491 (1995). "Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambigu-

ous, a court is required to give effect to that language." *Standard Venetian Blind Co. v. American Empire Ins. Co.,* 503 Pa. 300, 305, 469 A.2d 563, 566 (1983) (citation omitted). " 'Courts should read policy provisions to avoid ambiguities, if possible, and not torture language to create them.' " *Ryan Homes, supra,* 436 Pa.Super. at 346–47, 647 A.2d at 941, quoting *Carpenter v. Federal Ins. Co.,* 432 Pa.Super. 111, 118, 637 A.2d 1008, 1011–12 (1994). Further, "[i]n construing a contract, the intention of the parties is paramount and the court will adopt an interpretation which under all circumstances ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished." *Metzger, supra,* 327 Pa.Super. at 385, 476 A.2d at 5.

Our standard of review in construing an insurance contract is well-settled. Where the material facts of a controversy are not disputed, the determination of coverage under an insurance policy is a question of law. *Halpin v. LaSalle Univ.,* 432 Pa.Super. 476, 639 A.2d 37 (1994). When reviewing questions of law on appeal, we are not bound by the conclusions of the trial court but are free to draw our own inferences and reach our own conclusions. *American States Ins. Co. v. Maryland Casualty Co.,* 427 Pa.Super. 170, 628 A.2d 880 (1993).

In this appeal, the policy at issue is a limited peril policy. Therefore, the Landlords must show, as a necessary prerequisite to recovery, that their claim is within the coverage provided by the policy. *See Miller v. Boston Ins. Co.,* 420 Pa. 566, 218 A.2d 275 (1966). A limited peril policy purchased at a reduced cost, by its nature, circumscribes the losses for which recovery may be secured. *See Peerless Dyeing Co. v. Industrial Risk Insurers,* 392 Pa.Super. 434, 573 A.2d 541 (1990), *appeal denied,* 527 Pa. 636, 592 A.2d 1303 (1991). Moreover, courts will not interpret the policy language to provide coverage that is not intended. *See O'Brien Energy Systems, Inc. v. American Employers' Ins. Co.,* 427 Pa.Super. 456, 629 A.2d 957 (1993), *appeal denied,* 537 Pa. 633, 642 A.2d 487 (1994).

I differ from my colleagues in my view of the path to be followed in applying the well-established rules for construction

of insurance contracts. The Majority reasons that "a broad reading of the term 'explosion' could seemingly *encompass* a shotgun blast." Majority opinion at 553 (emphasis added). With this, I would agree. However, the Majority then finds that because of this, "the term [explosion] is susceptible to more than one meaning." *Id.* Thus, the Majority concludes that the term explosion is ambiguous and must be construed against the Insurer. I find this to be flawed reasoning.

The analysis by which it is determined whether an ambiguity exists must *precede* the application of the rules which flow from that ambiguity. It must first be determined whether the term under examination has more than one meaning before any consideration can be given to its application to a particular set of facts. I disagree with my colleagues because they first find that the term explosion may encompass more than one physical phenomenon, then they improperly find that since different phenomenon may be encompassed within the term explosion, the term itself is "susceptible to more than one meaning." Finally, they conclude that the "ambiguity" which they have established requires that the insurance policy be construed against the Insurer. The Majority determines that, "[u]sing this liberal interpretation, the trial court properly found that the shotgun damages ... were properly covered by [the Landlords'] insurance policy." *Id.* at 553.

Nowhere does the Majority set forth what a second meaning of the term explosion might be, which would be necessary to establish an ambiguity. On the contrary, my colleagues cite to *Allen v. Ins. Co. of North America,* 175 Pa.Super. 281, 104 A.2d 191 (1954). There, we considered whether the term explosion contained in a fire insurance policy was susceptible of more than one construction and, therefore, ambiguous. We concluded that it was not. In pertinent part, we said:

> We agree with [plaintiff/insured] that, where a policy is susceptible of more than one construction, it must be liberally construed in favor of the insured and against the insurer. However, it is equally well settled that, where there is no ambiguity, the court must construe the language of a policy in accordance with the plain ordinary meaning of

its terms. The term "explosion" as used in a policy of insurance must be taken in its ordinary sense. An "explosion" is defined by Webster as "a violent bursting or expansion, with noise". The distinguishing characteristic of an explosion is the detonation.

*Id.* at 284, 104 A.2d at 193 (citations omitted). Seventeen years earlier, in considering a policy imposing liability for damage or loss occurring by explosion only where fire ensued, and in that event for loss or damage by fire only, we said:

"An explosion produced by ignition, according to common understanding, may be accurately enough described for practical purposes as a sudden and rapid combustion, causing a violent expansion of the air, and producing a report more or less loud, according to the resistance offered. That it greatly varies in its degrees of violence and the effects produced are facts fully within the knowledge of all. The term as used in policies of insurance must be supposed to have been used in its ordinary and popular meaning."

*Tannenbaum v. Connecticut Fire Ins. Co.,* 127 Pa.Super. 278, 284, 193 A. 305, 308 (1937), quoting 3 Words & Phrases (First Series), at 2598 (citation omitted).

I see no reason to ignore or refuse to follow the precedent set by this Court in *Allen* and in *Tannenbaum.* The term explosion, when taken in its ordinary sense, is not capable of more than one meaning. Hence, there is no ambiguity inherent in the term itself. The fact that a shotgun blast could, arguably, be deemed to be an explosion connotes nothing more than that the term explosion may naturally encompass a variety of happenings. To say that a shotgun blast is one of the events that would qualify as an explosion is not to say that the term explosion has more than one meaning. Thus, I find the language contained in the provision of the policy here under review to be clear and unambiguous. This requires us to give effect to that language. *Standard Venetian Blind Co., supra.* Accordingly, on this appeal, the burden remains with the Landlords to show that the claim arising from the shotgun blast is within the coverage of the policy. *Miller, supra.*

With the burden properly placed upon the Landlords, I am unable to conclude that the facts of this case permit recovery under the terms of the limited peril policy here under review. As the Insurer correctly argues in its brief, when construing an insurance policy issued to cover ordinary risk of dwellings and commercial buildings, this Court must ascertain what was probably contemplated by the parties when the policy was written. *Knorr v. Commercial Cas. Ins. Co.,* 171 Pa.Super. 488, 90 A.2d 387 (1952), *appeal denied.* To ascertain the intent of the parties, we may consider the surrounding circumstances, the parties' situation, and the subject matter of the agreement. *Wrenfield Homeowners Ass'n., Inc. v. DeYoung,* 410 Pa.Super. 621, 600 A.2d 960 (1991). This Court will adopt the interpretation most reasonable and probable bearing in mind the objectives which the parties intended to accomplish through the agreement and the context in which the agreement took place. *Harrity v. Medical College of Pennsylvania Hosp.,* 439 Pa.Super. 10, 653 A.2d 5 (1994), *appeal denied,* —— Pa. ——, —— A.2d —— (June 21, 1995).

The coverage for explosion in the Landlords' limited peril policy can reasonably be understood to apply to ordinary risks common to dwellings such as the unexpected build-up of pressure within home heating components or the accidental ignition of natural gas concentrations arising from a gas line leak. When the Landlords' tenant deliberately aimed a shotgun at his own head and pulled the trigger, the shotgun operated precisely as designed and discharged its load in a directed, focused and purposeful manner. There was nothing spontaneous, accidental or diffuse in the manner in which the shotgun was operated. There was no unexpected pressure. The issue is not whether the means by which a weapon is discharged may be technically characterized as an "explosion." The issue on this appeal is whether the intentional firing of a shotgun within a residential dwelling unit is included in the limited risks contemplated by the parties when the risk of explosion, without further definition, is set forth as one of several perils, including fire or lightning, windstorm or hail, and riot or civil commotion, which is covered by the policy.

The Insurer persuasively argues that the exotic nature of the incident at issue, by itself, cannot be allowed to transform the limited peril insurance policy to an all-risk policy. It also contends that the unusual circumstances of this case cannot be allowed to impermissibly shift the burden of proof to the Insurer to show exclusion from coverage. Because I agree, I am constrained to respectfully dissent. I would reverse the judgment in favor of the Landlords and remand with directions that judgment be entered in favor of the Insurer.