Andre KNOX

v.

SEPTA and George Hill and
PA Financial Responsibility
Assigned Claims Plan.

Craig Friend

v.

SEPTA and George Hill and
PA Financial Responsibility
Assigned Claims Plan.

Fairley Matthews

v.

SEPTA, Matthew Manning and George
Hill and PA Financial Responsibility
Assigned Claims Plan.

Lakeah Watson

v.

SEPTA, Matthew Manning and George
Hill and PA Financial Responsibility
Assigned Claims Plan.

Appeal of: Andre Knox, Craig
Friend, Fairley Matthews
and Lakeah Watson.

Commonwealth Court of Pennsylvania.

Argued Oct. 10, 2013.
Decided Nov. 12, 2013.

Kenneth M. Kapner, Philadelphia, for appellant Andre Knox.

Osvaldo Fontecchio, Philadelphia, for appellant Craig Friend.

Dianne A. Dichter, Philadelphia, for appellee PA Financial Responsibility Assigned Claims Plan.

BEFORE: BROBSON, Judge, McCULLOUGH, Judge (P.), and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

This appeal arises from eight separate lawsuits filed in the Court of Common Pleas of Philadelphia County (trial court). On January 7, 2007, a bus owned by the Southeastern Pennsylvania Transportation Authority (SEPTA) was rear-ended by a vehicle driven and owned by George Hill (Hill), who was uninsured. Hill allegedly struck the SEPTA bus while it was stopped to discharge passengers. As a result of the accident, Andre Knox, Fairley Matthews, Craig Friend and Lakeah Watson (collectively "Passengers") asserted they were injured. Passengers each filed two individual complaints (eight total complaints): one complaint each against SEPTA, the bus driver (Matthew Manning), and Hill (collectively "SEPTA actions"); and one each against the Pennsylvania Financial Responsibility Assigned Claims Plan [1] (Plan) ("Plan actions").[2]

The trial court consolidated the eight lawsuits pursuant to Pa. R.C.P. No. 213, on March 28, 2011, for purposes of discovery and trial. The court further directed that the lawsuits be major cases assigned to the trial list under the lead case captioned *Andre Knox v. SEPTA, et. al,* January Term, 2009, No. 0157. In the four Plan actions, the Plan filed motions for summary judgment on the basis that Passengers were occupants of a vehicle that was both self-insured and immune from liability pursuant to Section 1752(a)(5) of the Motor Vehicle Financial Responsibility

1. The purpose of the Plan, which is an entity created by the General Assembly under the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §§ 1701–1799.7, "is to provide limited statutory benefits to individuals injured in motor vehicle-related accidents who qualify as 'eligible claimants' and are not otherwise entitled to recover insurance benefits." *Christian v. Pennsylvania Financial Responsibility Assigned Claims Plan,* 454 Pa.Super. 512, 686 A.2d 1, 3 n. 1 (1996).

2. The eight lawsuits were captioned and docketed in the trial court as: (1) *Andre Knox v. SEPTA and George Hill,* January Term, 2009, No. 00157; (2) *Craig Friend v. SEPTA and George Hill,* December Term, 2008, No. 04277; (3) *Lakeah Watson v. SEPTA, Matthew Manning and George Hill,* October Term, 2008, No. 03676; (4) *Fairley Matthews v. SEPTA, Matthew Manning and George Hill,* December Term, 2008, No. 03607; (5) *Andre Knox v. Pennsylvania Financial Responsibility Assigned Claims Plan,* August Term, 2010, No. 02078; (6) *Fairley Matthews v. Pennsylvania Financial Responsibility Assigned Claims Plan,* November Term, 2010, No. 02313; (7) *Lakeah Watson v. Pennsylvania Financial Responsibility Assigned Claims Plan,* September Term, 2010, No. 02780; and (8) *Craig Friend v. Pennsylvania Financial Responsibility Assigned Claims Plan,* September Term, 2010, No. 03937.

Law (MVFRL).[3] By four separate orders dated April 11, 2011, the trial court granted each of the Plan's motions for summary judgment. No appeals were filed from those four orders.

The four SEPTA actions proceeded in the trial court and, following a non-jury trial, the trial court entered an order on March 13, 2012, ruling in favor of Passengers and against SEPTA. Following motions for post-trial relief, the trial court entered an order finding in favor of SEPTA and Manning and against Passengers. Thus, by order dated July 18, 2012, the trial court entered a directed verdict in favor of SEPTA and Manning, which order was docketed at numbers 00157, 04277, 03607, and 03676. Passengers filed a single notice of appeal in the Pennsylvania Superior Court seeking review of the trial court's July 18, 2012, order. Passengers did not specify any other order in their notice of appeal or include the docket numbers for the four cases filed against the Plan. The Superior Court then transferred the appeal to this court.

In their Concise Statement of Errors Complained of on Appeal filed pursuant to Pa. R.A.P. 1925(b), Passengers alleged that: (1) the trial court erred in granting the Plan's motions for summary judgment; (2) the trial court erred in granting SEPTA's post-trial motion for a directed verdict on the basis that SEPTA is a Commonwealth agency protected by sovereign immunity for first party and uninsured motorist benefits based on a finding that the SEPTA bus was not "in operation" when it was struck by Hill's uninsured vehicle;[4] and (3) the trial court's grant of "Defendants" motions is against public policy, because it leaves no remedy for otherwise uninsured private, fare paying passengers of a public transit vehicle injured as a result of the negligence of an uninsured motorist.

Following the filing of Passengers' principal brief on the merits, the Plan filed a Motion to Dismiss and/or Quash (Motion to Quash) this appeal to the extent it seeks to overturn the trial court's April 11, 2011, orders granting the Plan's motions for summary judgment. Passengers filed an answer to the Motion to Quash and Memorandum of Law in support thereof as directed by this court. This court directed that the Plan's Motion to Quash be decided with the merits of Passengers' appeal from

---

**3.** 75 Pa.C.S. § 1752(a)(5). Section 1752(a)(5) provides that "[a] person is eligible to recover benefits from the Assigned Claims Plan if the person" "[i]s not the operator or occupant of a motor vehicle owned by a self-insurer or by an individual or entity who or which is immune from liability for, or is not required to provide, benefits or uninsured and underinsured motorist coverage." *Id.* An eligible claimant may recover limited medical benefits but may not recover any income loss benefit or accidental death benefit. Section 1753 of the MVFRL, 75 Pa.C.S. § 1753.

**4.** "SEPTA and its employees acting within the course and scope of their employment are generally immune from suit 'for damages arising out of a negligent act' unless the action falls within one of the enumerated exceptions" set forth in what is commonly referred to as the Sovereign Immunity Act, 42 Pa.C.S. §§ 8521–8528. *Wright v. Denny*, 33 A.3d 687, 689 (Pa.Cmwlth.2011), *appeal denied*, —— Pa. ——, 63 A.3d 1250 (2012) (quoting Section 8522 of the Sovereign Immunity Act, 42 Pa. C.S. § 8522). The vehicle liability exception provides:

> The operation of any motor vehicle in the possession or control of a Commonwealth party. As used in this paragraph, "motor vehicle" means any vehicle which is self-propelled and any attachment thereto, including vehicles operated by rail, through water or in the air.

Section 8522(b)(1) of the Sovereign Immunity Act, 42 Pa.C.S. § 8522(b)(*l* ). The motor vehicle must be "in operation" in order for this exception to apply. *Love v. City of Philadelphia*, 518 Pa. 370, 375, 543 A.2d 531, 533 (1988).

the trial court's July 18, 2012, order. We address first the Plan's Motion to Quash.

## MOTION TO QUASH

■ In support of the Motion to Quash, the Plan argues, *inter alia,* that the trial court's March 28, 2011, consolidation of the Plan actions with the SEPTA actions for purposes of discovery and trial did not merge the cases into a single action in which a single judgment was rendered. In other words, the cases remained separate for all purposes other than trial and, therefore, separate appeals were required for each final judgment. Thus, the Plan argues that Passengers had 30 days from the entry of the April 11, 2011, orders to file an appeal pursuant to Pa. R.A.P. 903(a).

In response, Passengers assert that, given the procedurally difficult landscape and important policy interests, a full merits review of the trial court's orders granting the Plan summary judgment and granting SEPTA post-trial relief is necessary. Passengers argue that the Pennsylvania Supreme Court's decision in *Kincy v. Petro,* 606 Pa. 524, 2 A.3d 490 (2010),[5] is not controlling and that the Plan could have objected when the trial court entered its order consolidating these matters but it chose not to do so.

Upon review, we conclude that Passengers' purported appeal from the trial court's April 11, 2011, orders granting the Plan's motions for summary judgment is not properly before this court. Pa. R.C.P. No. 213(a) governs consolidation of actions and provides:

(a) In actions pending in a county which involve a common question of law or fact or which arise from the same transaction or occurrence, the court on

its own motion or on the motion of any party may order a joint hearing or trial of any matter in issue in the actions, may order the actions consolidated, and may make orders that avoid unnecessary cost or delay.

In *Kincy,* 606 Pa. at 529, 2 A.3d at 493, the Supreme Court held that under Pa. R.C.P. No. 213(a):

a trial court has three options where pending actions involve either a common question of law or fact, or which arise from the same transaction: (1) ordering a joint trial or hearing on any matter at issue; (2) ordering the actions "consolidated"; and (3) issuing other orders designed to avoid unnecessary costs or delay.

With respect to the second option, the Supreme Court held that a complete consolidation of separate actions, such that the actions lose their separate identities and become a single action, "cannot be achieved unless the actions involve the same parties, subject matter, issues, and defenses." *Id.* at 532, 2 A.3d at 495. The Supreme Court stated that where there is a "complete consolidation" of separate actions under Pa. R.C.P. No. 213(a), the multiple suits lose their separate identities and are combined into a single proceeding in which one judgment is rendered. *Id.* at 530, 2 A.3d at 494. The Supreme Court noted that if separate actions are only consolidated for trial, each action retains its separate character, has its own docket entries, and produces its own verdict and judgment. *Id.* at 529 n. 4, 2 A.3d at 493 n. 4.

Accordingly, pursuant to Pa. R.C.P. No. 213(a) and the Pennsylvania Supreme Court's interpretation thereof, complete consolidation of the Plan actions with the

5. While the Motion to Quash and the Plan's brief do cite case law, the Plan does not discuss the Pennsylvania Supreme Court's opinion in *Kincy.* Passengers were directed by this court to address *Kincy* in their response to the Motion to Quash.

SEPTA actions could not be achieved because they involve different parties, issues and defenses. The trial court's March 28, 2011, order only consolidated the eight separate actions for purposes of discovery and trial. Thus, Passengers should have filed appeals from the trial court's April 11, 2011, orders within 30 days pursuant to Pa. R.A.P. 903(a). Having failed to do so, those orders are final and Passengers cannot now try to obtain review of those orders through their appeal of the trial court's July 18, 2012, order granting SEPTA post-trial relief. Therefore, we will grant the Plan's Motion to Quash to the extent it seeks dismissal of Passengers' purported appeal of the trial court's April 11, 2011, orders granting the Plan's motions for summary judgment. We now turn to Passengers' appeal from the trial court's July 18, 2012, order granting SEPTA's motion for a directed verdict.

### MERITS

We begin with a recitation of the facts in this matter as set forth by the trial court in its opinion in support of its July 18, 2012, order.

The stipulated facts are as follows:

1. [Passengers] were passengers on board a SEPTA Route 56 bus.

2. On January 7, 2007, the SEPTA Route 56 bus was stopped on Erie Avenue at its intersection with "D" Street in Philadelphia, Pennsylvania.

3. At the time of the incident, the SEPTA Route 56 bus was stopped for the purpose of discharging and "picking-up" passengers.

4. The stopped SEPTA Route 56 bus was rear-ended by a vehicle owned and operated by defendant George Hill.

5. The vehicle owned and operated by defendant Hill was uninsured.

6. [Passengers] were injured as a result of this collision.

7. If defendant SEPTA is obligated to pay uninsured motorist benefits, Andre Knox shall receive a total of $15,000; Craig Friend shall receive a total of $6,500; Fairley Matthews shall receive a total of $6,500 and Lakeah Watson shall receive a total of $2,000.

8. If defendant SEPTA is found to not to [sic] be immune, SEPTA agrees to pay $5,000 in first party benefits to plaintiff Craig Friend.

### ADDITIONAL FINDINGS OF FACT

9. The SEPTA Route 56 bus is a mass transit vehicle as provided under the Vehicle Code,

"Mass transit vehicle."—A self-propelled or electrically propelled device designed for carrying 15 or more passengers exclusive of the driver, other than a taxicab, designed and used for the transportation of persons for compensation, including but not limited to subway cars, buses, trolleys and trackless trolleys but excluding railroad passenger cars.

75 Pa.C.S. § 102.

10. Defendant Hill negligently operated his vehicle.

11. The negligent operation of defendant Hill resulted in [Passengers'] injuries.

12. SEPTA is a self-insurer as provided in 75 Pa.C.S. §§ 1702, 1787.

13. SEPTA was not negligent in the operation of the Route 56 bus.

(Trial Ct. Op., 7/18/12, at 1–2.) By order entered March 13, 2012, the trial court found in favor of Passengers and against SEPTA in the SEPTA actions and as-

sessed damages as set forth in finding of fact 7. In so doing, the trial court concluded "that SEPTA [was] immune as to theories of negligence as the mass transit vehicle was stopped at the time of the incident." (Trial Ct. Op., 3/13/12, at 4.) However, the trial court determined that there remained the claim asserted by Passengers against SEPTA as a provider of uninsured motorist coverage. The trial court stated that there was no dispute that SEPTA is a self-insurer with uninsured motorist coverage. Citing Section 1787 of the MVFRL, 75 Pa.C.S. § 1787, the trial court stated that "[s]elf insurers, with the exception of motor vehicles owned by the United States, are not relieved of their obligation to provide uninsured motorist coverage." (*Id.* at 4.) The trial court rejected SEPTA's assertion that the scope of sovereign immunity engulfed uninsured motorist claims presented against a governmental agency. The trial court determined that sovereign immunity applied to allegations of negligence by the government entity and negligence is not the issue with respect to the claims brought under the uninsured motorist coverage. Accordingly, the trial court held that "SEPTA, as a self-insurer, was required to and did provide uninsured motorist coverage." (*Id.* at 5.)

SEPTA and Manning filed a motion for post-trial relief requesting a directed verdict. In its opinion in support of its order granting the motion for a directed verdict, the trial court framed the issue before it as "[w]hether self[-]insurer SEPTA, as a

Commonwealth agency enjoying the defense of sovereign immunity, is nonetheless required to provide uninsured motorist coverage to passengers of a stopped SEPTA vehicle who sustained injuries when the SEPTA vehicle was rear-ended by an uninsured motorist." (Trial Ct. Op., 7/18/12, at 1–2.) The trial court held that this court's 2011 decision in *Wright v. Denny*, 33 A.3d 687 (Pa.Cmwlth.2011), *appeal denied*, —— Pa. ——, 63 A.3d 1250 (2012), controlled this case because the SEPTA Route 56 bus was stopped when it was rear ended by Hill. (*Id.* at 4.) In other words, because SEPTA was immune from liability, Passengers were not entitled to uninsured motorist benefits from SEPTA. This appeal followed.[6]

█ Passengers raise two issues for this court's review in their appeal from the trial court's July 18, 2012, order: (1) whether SEPTA can assert the affirmative defense of sovereign immunity under Section 8522 of what is commonly referred to as the Sovereign Immunity Act, 42 Pa.C.S. § 8522, in light of the reasoning of the Pennsylvania Supreme Court in *Goldman v. Southeastern Pennsylvania Transportation Authority*, —— Pa. ——, 57 A.3d 1154 (2012), holding that SEPTA is not an arm of the state for Eleventh Amendment purposes; and (2) whether the trial court's granting of SEPTA's motion for a directed verdict that relieved it of liability for both types of coverage under a claim of sovereign immunity as a matter of law based on *Wright* violates public policy.[7]

6. "This [c]ourt's scope of review of the trial court's grant of directed verdict is limited to determining whether the court abused its discretion or committed an error of law which controlled the outcome of the case." *Shedrick v. William Penn School District*, 654 A.2d 163, 164 (Pa.Cmwlth.1995). "In deciding a motion for directed verdict, the trial court must accept as true all facts and inferences which support contentions made by the

party against whom the motion is made and shall reject all testimony and references to the contrary." *Id.*

7. Because we granted the Plan's Motion to Quash, we will not address any argument raised by Passengers asserting that the trial court erred by granting the Plan's motions for summary judgment or any argument that Pas-

In support of the first issue, Passengers argue that SEPTA cannot assert immunity pursuant to the Sovereign Immunity Act because it is not an arm of the state under *Goldman*. Passengers contend that *Goldman* is not distinguishable because it concerned the application of the Eleventh Amendment and what constitutes a sovereign entity. Passengers argue that the similarities are much more compelling as only a legislative act can designate that SEPTA was a sovereign arm, which the *Goldman* court revealed was insufficient to confer this status upon SEPTA. Passengers assert that the facts and legal conclusions cited in *Goldman* constitute binding determinations against SEPTA on the issue of whether it is in actuality protected from liability under the doctrine of sovereign immunity.

A close reading of our Supreme Court's decision in *Goldman* shows that the Court did not hold that SEPTA is not a Commonwealth agency for purposes of the Sovereign Immunity Act. The Supreme Court held, for purposes of determining whether allowing SEPTA to be subject to employee lawsuits under Federal Employees Liability Act [8] (FELA) in state courts offended the dignity of the Commonwealth, that allowing such suits did not subject the Commonwealth to the coercive process of judicial tribunals at the instance of private parties; in such suits, the Commonwealth would not be a named defendant, no purported negligent act of the Commonwealth would be at issue, the Commonwealth could not be joined as a defendant, and the Commonwealth would not be required to enter an appearance to defend a FELA suit on SEPTA's behalf. *Goldman*, —— Pa. at ——, 57 A.3d at 1183–85. The Supreme Court specifically noted that it was not deciding whether Section 8522 of the Sovereign Immunity Act, 42 Pa.C.S. § 8522, barred any claims brought under FELA. *Id.* at —— n. 9, 57 A.3d at 1165 n. 9. "[B]ecause the issue of whether SEPTA is an arm of the Commonwealth entitled under the Eleventh Amendment to claim the protection of the Commonwealth's sovereign immunity is a question of federal law," the Supreme Court held that interpretation of the Sovereign Immunity Act did not control its resolution of this question. *Id.* Accordingly, we decline to extend the decision in *Goldman* to hold in this case that SEPTA is not a Commonwealth agency for purposes of the Sovereign Immunity Act.

■ In support of the second issue raised in this appeal, Passengers argue that the trial court's granting of SEPTA's motion for a directed verdict leaves a class of innocent public transit passengers without medical or liability insurance coverage merely because Hill was uninsured or the SEPTA bus, while in all practicality was being operated by Manning, was not moving. Passengers urge this court to revisit

---

sengers are entitled to recover uninsured motorist benefits from the Plan.

8. 45 U.S.C. §§ 51–60. As explained by the Supreme Court in *Goldman:*

FELA establishes a compensation structure for railroad workplace injuries which preempts state tort remedies and workers' compensation statutes. *Norfolk Southern Railway v. Sorrell,* 549 U.S. 158, 165 [127 S.Ct. 799, 166 L.Ed.2d 638] (2007); *see also Trucco v. Erie R.R.,* 353 Pa. 320, 45 A.2d 20 (1946) (FELA furnishes an injured railway worker a sole and exclusive remedy; hence, the Pennsylvania Workmen's Compensation Act is "inapplicable.") However, FELA is not in the nature of a typical workers' compensation system, which provides an injured worker with monetary compensation for his or her injuries without regard to fault, but, instead, provides the injured railroad worker a statutory cause of action based on principles of negligence. 45 U.S.C. § 51.

—— Pa. at —— n. 1, 57 A.3d at 1160 n. 1.

our interpretation of the Pennsylvania Supreme Court's decision in *Love v. City of Philadelphia*, 518 Pa. 370, 543 A.2d 531 (1988), that a bus must be in motion in order for it to be in operation. Passengers assert that concluding that a transit authority bus that is actively driven by one of its employees is not in operation for purposes of the vehicle liability exception to immunity whenever it comes to a complete stop in order to pick up and drop off fare-paying passengers is a legal fiction and qualifies as "absurd" under statutory construction.

Passengers argue further that *Wright* is inconsistent with Pennsylvania's remedial policy that protects its citizens from having no level of insurance protection where uninsured motorists cause injury. Passengers assert that passengers have a reasonable expectation of insurance protection for incidents involving public transit authority buses and they urge this court to overrule *Wright* and hold that SEPTA is not immune from liability. Passengers contend that such a holding would be consistent with this court's decisions in *Lowery v. Port Authority of Allegheny County*, 914 A.2d 953 (Pa.Cmwlth.2006), and *Paravati v. Port Authority of Allegheny County*, 914 A.2d 946 (Pa.Cmwlth.2006), which hold that a self-insurer is statutorily required to provide uninsured motorist benefits and that a party's entitlement to those benefits does not depend upon a finding of negligence by a Commonwealth agency under the exceptions to immunity enumerated in the Sovereign Immunity Act.

■ There is no dispute that SEPTA, as a self-insurer, is mandated to provide all bus passengers with personal injury protections and uninsured motorist benefits. *See* Section 1787(a)(3) of the MVFRL, 75 Pa.C.S. § 1787(a)(3) (mandating the self-insurers must provide uninsured motorist benefits up to certain limits). In *Wright*, this court addressed the issue of

> whether the trial court erred by denying the Wrights' motion for post-trial relief where, as a matter of law, sovereign immunity was inapplicable because the negligence or non-negligence of SEPTA was immaterial to uninsured motorist claims because, in an uninsured motorist claim, SEPTA stands in the shoes of the negligent uninsured third party that causes injuries to SEPTA bus passengers.

33 A.3d at 689. In resolving this issue, the court reviewed whether SEPTA was immune from liability pursuant to the Sovereign Immunity Act for a bus accident where Joe Wright, a passenger on the bus, was injured when the bus, which was stopped at an intersection, was rear-ended by an uninsured motorist. We recognized that immunity statutes are applicable to claims brought under the MVFRL and that the MVFRL and the immunity statutes must be construed together so that one does not supersede another. *Id.* at 690 (citing *Gielarowski v. Port Authority of Allegheny County*, 159 Pa.Cmwlth. 214, 632 A.2d 1054, 1056–57 (1993)). Thus, we reasoned that for Wright to recover under the MVFRL, his claim would have to fall within the vehicle liability exception to sovereign immunity. *Id.* at 689. However, we held, pursuant to the Supreme Court's decision in *Love*, that because the SEPTA bus was not in motion, and, therefore, not in operation at time of the accident with the uninsured motorist, the vehicle liability exception to sovereign immunity did not apply in Wright's action to recover uninsured motorist benefits from SEPTA. *Id.* at 691.

We also distinguished two cases relied upon by the Wrights, and the Passengers here, for the contention that the uninsured claims against SEPTA are not barred by

sovereign immunity. *Id.* We pointed out that in both *Lowery* and *Paravati,* the buses were in motion when the collisions occurred; thus, the buses were in operation and the vehicle liability exception to sovereign immunity was met. *Id.* In other words, the injured passengers in *Lowery* and *Paravati* were entitled to uninsured motorist benefits from the Port Authority because it was not immune. *Id.* Thus, this Court in *Wright* concluded "that the trial court did not err in determining that Wrights were not entitled to uninsured motorist benefits from SEPTA." *Id.*

While we empathize with Passengers' position, this case is on all fours with our decision in *Wright.* As in *Wright,* Passengers here are not entitled to uninsured motorist benefits because SEPTA is immune from liability for the bus accident. The bus was stopped when it was rear-ended by Hill; therefore, it was not in operation. Overturning *Wright* and reinterpreting *Love* would require us to contravene clear and long-standing precedent, and any change in the law based upon public policy must come from the General Assembly.

For the foregoing reasons, we grant the Plan's Motion to Dismiss and/or Quash Passengers' purported appeal from the trial court's April 11, 2011, orders granting the Plan's motions for summary judgment. We affirm the trial court's July 18, 2012, order.

*ORDER*

AND NOW, this 12th day of November, 2013, we hereby order as follows:

1. The Motion to Dismiss and/or Quash filed by the Pennsylvania Financial Responsibility Assigned Claims Plan (Plan) is **GRANTED** and Passengers' purported appeal from the April 11, 2011, orders of the Court of Common Pleas of Philadelphia County granting the Plan's motions for summary judgment is **QUASHED**; and

2. The order of the Court of Common Pleas of Philadelphia County, dated July 18, 2012, is hereby **AFFIRMED.**