# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Mark Hogan | : | |
| Karen Hogan | : | |
| | : | |
| v. | : | |
| | : | |
| Lower Bucks County Joint | : | |
| Municipal Authority | : | |
| | : | |
| David Anderson | : | |
| Maureen Anderson | : | |
| | : | |
| v. | : | Nos. 1462 C.D. 2014 |
| | : | 2246 C.D. 2014 |
| Lower Bucks County Joint | : | Argued: May 5, 2015 |
| Municipal Authority | : | |
| | : | |
| Jeffery Hudson | : | |
| | : | |
| v. | : | |
| | : | |
| Lower Bucks County Joint | : | |
| Municipal Authority | : | |
| | : | |
| Appeal of: Mark Hogan, Karen Hogan, | : | |
| David Anderson, Maureen Anderson | : | |
| and Jeffery Hudson | : | |

BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                    **FILED: August 26, 2015**

## I. Introduction

These consolidated appeals have their genesis in a negligence action

for property damage resulting from residential flooding in Levittown, Bucks

County, following the removal of a sewer main blockage by the Lower Bucks County Joint Municipal Authority (Defendant). Three sets of homeowners, Mark and Karen Hogan, David and Maureen Anderson, and Jeffrey Hudson (Plaintiffs), who sustained sewage damage to their homes, appeal from an order of the Court of Common Pleas of Bucks County[1] (trial court) that denied their motion for relief from a directed verdict in favor of Defendant.

At the heart of this appeal are two critical rulings by the trial court. First, the trial court precluded expert opinion testimony from Plaintiffs' forensic mechanical engineer, Frederic M. Blum (Plaintiffs' Expert). The proffered opinion related to whether Defendant acted negligently in immediately removing the upstream blockage without taking the time to check for possible problems downstream. Second, the trial court determined Plaintiffs needed to present expert testimony before the jury because the proper method to clean a sewer main line in an emergency is not within the common knowledge and experience of an average lay person.

On appeal, Plaintiffs contend the trial court abused its discretion in determining Plaintiffs' Expert's report and testimony were flawed, thereby precluding Plaintiffs' Expert from rendering an opinion on negligence. Alternatively, Plaintiffs contend the trial court abused its discretion in directing a verdict in favor of Defendants on the ground that Plaintiffs needed, but lacked, expert testimony on the standard of care.

---

[1] The Honorable Robert Mellon presided.

2

For its part, Defendant contends the trial court abused its discretion by denying Defendant's motions *in limine*.

For the following reasons, we affirm on the merits of Plaintiffs' appeal at 1462 C.D. 2014, and quash Plaintiffs' appeal at 2246 C.D. 2014, as an improper appeal from a void order of the trial court.

## II. Background
### A. Generally

In an opinion in support of its order, the trial court noted this case involves a blockage in a sanitary sewer main that caused a backup in the lateral pipes and flooding in three residences. Defendant maintains and operates the eight-inch sewer main at issue. The pitched main is a gravity system wherein the sewage flows downstream. The bell and spigot pipes are made out of terra cotta clay and were installed 60 years ago. They have never been repaired or replaced.

On Saturday, June 9, 2012, Defendant received notice of a sewer blockage at 25 Gable Hill Road. Defendant dispatched a field crew to assess the blockage. The crew included Defendant's Chief of Field Operations Jim Coon (Field Chief). In order to determine the area of the blockage, Field Chief opened the manhole cover at 25 Gable Hill Road (Manhole 1). He observed water backing up at that location. Field Chief then walked downstream from Manhole 1 to Manhole 2, and he observed that Manhole 2 was dry. He concluded a blockage existed somewhere between Manhole 1 and Manhole 2. After assessing the scene,

3

Field Chief decided to use Defendant's high velocity jet truck to remove the blockage. The jet truck uses a high-pressure water hose to unclog and destroy blockages in the sewer pipe, which allows the water to flow downstream.

The high-pressure hose unclogged the blockage between Manhole 1 and Manhole 2, and the water began to flow. Field Chief then noticed Manhole 2 began to fill with water. Field Chief and the team then went further downstream to inspect Manhole 3, located at 5 Gable Hill Road.

While he was on the way to Manhole 3, a resident of 5 Gable Hill Road informed Field Chief that sewage was backing up into her home. Field Chief looked into Manhole 3 and observed it was empty. Field Chief determined another blockage existed between Manhole 2 and Manhole 3.

Field Chief could not see the blockage from Manhole 3 because it is not possible to look up the sewer line from a manhole. In an attempt to clear the blockage as quickly as possible, Field Chief and his crew attempted to immediately open the second blockage with the high pressure hose rather than take the time to insert a camera or other equipment to determine the cause of the blockage. The first attempt to clear the blockage failed. Field Chief then added a root cutter to the hose and cleared the tree roots and blockage. He ultimately concluded that tree roots growing into the pipe caused the blockage at Manhole 3.

The trial court noted the act of unclogging the upstream blockage between Manhole 1 and Manhole 2 caused the backup downstream at Manhole 3.

4

The backup at Manhole 3 caused a backup into the laterals off the main and the flooding of Plaintiffs' residences, which resulted in damages to all three residences.[2]

In June 2012, Plaintiffs filed three separate complaints alleging Defendant acted negligently in the handling of a blockage in the sewer main line causing a sewer backup and flooding at each of their respective homes, which caused damages. The three cases were consolidated into one action.

Plaintiffs asserted Defendant had constructive notice of tree-root infiltration at the location of the second blockage. Defendant's log record indicated a tree-root blockage 29 years earlier near the location of the second blockage. Plaintiffs contended this record provided Defendant with constructive notice of tree-root blockage in that area for purposes of the utilities exception to governmental immunity. See Section 8542(b)(5) of what is known as the Tort Claims Act, 42 Pa. C.S. §8542(b)(5) (actual or constructive notice of a dangerous condition necessary for imposition of liability under the utilities exception to governmental immunity). Absent constructive notice, Plaintiffs' action would not fall within the utilities exception.

Aside from the immunity issue, Plaintiffs intended to offer expert testimony that Defendant acted negligently by removing the initial clog at the upstream location without first checking the downstream location for problems.

---

[2] The parties stipulated to the following damage amounts: Hogan ($28,915.04); Hudson ($31,789); and Anderson ($33,000 plus delay damages). R.R. at 131a.

## B. Trial

## 1. Exclusion of Plaintiffs' Expert's Testimony

At the beginning of trial, Defendant filed a motion *in limine*, or threshold motion, to preclude the testimony of Plaintiffs' Expert on the basis of qualifications.[3]  Ultimately, during Plaintiffs' presentation of their case, the trial court denied the qualification-based threshold motion.  Nevertheless, the trial court precluded Plaintiffs' Expert from rendering an opinion on the negligence of Defendant based on the insufficiency of both his report and his testimony during the hearing on the motion.  See Reproduced Record (R.R.) at 324a-408a.

In so doing, the trial court explained that Plaintiffs' Expert did not base his personal opinion on any accepted industry standard of care.  Plaintiffs' Expert's report did not identify any rule, regulation, ordinance, statute or established standard as a basis for his opinion.  Rather, he just offered his personal opinion.

Further, although Plaintiffs' Expert opined there was a high degree of probability of a second blockage occurring after the clearing of the first, Plaintiffs' Expert failed to adequately explain what he meant by the phrase: high degree of probability.  His definition of that phrase varied from possibility to probability.  As such, the trial court determined Plaintiffs' Expert's insufficient level of certainty

---

[3] Defendant also sought to preclude Plaintiffs' Expert's testimony and report based on his methodology.  Ultimately, this *in limine* motion was denied, and the ruling is not relevant to the current appeal.

also necessitated a ruling precluding his testimony. Consequently, Plaintiffs' Expert did not testify at trial.

### 2. Plaintiffs' Evidence

At trial, Plaintiffs first called Defendant's Managing Director, Vijay Rajput (Managing Director) on cross-examination. Managing Director manages and oversees Defendant's operations. R.R. at 204a. He holds several engineering licenses, including a master and doctorate in environmental engineering. R.R. at 205a. Managing Director also holds masters licenses from the Department of Environmental Protection (DEP) in wastewater system operations and water systems. R.R. at 232a. He also teaches DEP-approved courses on those subjects. R.R. at 232a-33a.

Managing Director testified the normal procedure in an emergency blockage is to go to the site and clear the blockage if there is a sewer backup. R.R. at 229a. Notably, Managing Director testified the procedure Defendant employed during the blockage is the industry-wide accepted procedure. R.R. at 233a. It remains the procedure utilized by the industry. Id. In an emergency situation, a field crew does not have time to review log information concerning previous blockages, such as the record of the 1983 blockage, which occurred near the 2012 blockage. R.R. at 228a.

Plaintiffs next called Defendant's Field Chief on cross-examination. R.R. at 244a. Field Chief worked for Defendant for 27 years. R.R. at 245a. He recalled the events of the day in question. Defendant received a call regarding a

7

full manhole at 25 Gable Hill Road, and that the residents were experiencing trouble with their toilet. R.R. at 263a. Field Chief testified this was an emergency, not a routine situation, because the people upstream are unaware of the backup and keep using the system. R.R. at 264a. The field crew determined the primary cause of the blockage to be rags. Id. They later determined that roots were also involved. Id.

> On direct examination by Defendant, Field Chief further testified:
>
> Q. Do you ever make contact with other people who do what you do?
> A. Yes.
> Q. People from other townships and other authorities?
> A. Correct.
> Q. When you meet with those people, do you ever discuss the way things are done in your industry?
> A. Yes.
> * * * *
> Q. In your conversation with people, with people in your position, other authorities and other municipalities, have you ever learned of a different way of clearing a blockage other than the way you've been doing it for the last 27 years?
> A. No.
> Q. <u>And is it your understanding that the way you do things is the industry standard as to how it's done?</u>
> A. <u>Yes</u>.
> Q. <u>Is it just the standard for [Defendant] or is that other places as well?</u>
> A. <u>Everywhere I know they do it the same way</u>.
> Q. Now, you told us earlier that you referred to this as an emergency?
> A. Correct.
> Q. Why is this an emergency?
> A. Because at any time when we got the call for 25 Gable Hill, they were already having a problem. So it could be another flushed toilet, it could be somebody washing

8

their hands, that that extra gallon, extra five gallons, could create a backup into that home at any time.

R.R. at 289a-91a (emphasis added).

Plaintiffs also called Defendant's Field Technician and Pump Station Supervisor, Phillip Smythe (Field Technician) on cross-examination. He likewise testified sewer main blockages are treated as a high priority emergency. R.R. at 322a. By the time a homeowner notifies Defendant, the homeowner is either having a problem or is about to have a problem. Id. As such, clearing them cannot be delayed. Id. If the blockage is not immediately cleared, it's a virtual guarantee that sewage will flood the house. Id. Field Technician added that in 31 years with Defendant, he only recalled one other incident where a cleared blockage created a second blockage downstream. R.R. at 323a.

### 3. Motion *in Limine*: Plaintiffs' Expert Evidence

As discussed above, the trial court ultimately precluded Plaintiffs' Expert from offering an opinion on negligence. During the second day of the trial, the trial court denied Defendant's threshold challenge to Plaintiffs' Expert's qualifications to testify as an expert. See R.R. at 385a-86a. Nonetheless, the trial court gave the following reasons for limiting Plaintiffs' Expert's testimony (with emphasis added):

THE COURT: The question before the Court is whether or not the opinion expressed by the expert both in his testimony and in his expert report jointly or singularly rises to the level sufficiently to be admissible.

Pennsylvania case law has indicated an opinion based on mere possibility is not competent evidence.

9

> Clearly Pennsylvania case law has numerous examples where an expert has stated their personal opinion as opposed to the opinion necessary for the industry based on the industry standard.
>
> No magic language is required, but something more than what we have here which is very highly – it is with high probability that the release created clogs, that there was, that means, a good chance that the release created clogs, that it was his personal opinion as to what should have been done and how the release should have occurred, that it is his professional personal opinion. All of those expressions are insufficient basis for which an expert opinion can be presented to a jury.
>
> Therefore, during the testimony of the witness, he is instructed that he may not state those opinions with regard to the sudden release of an abnormally large volume of water and solid material caused or created clogs. He is also restricted and cannot testify on all subject matter dealing with such issues.

R.R. at 387a-89a.

The trial court further noted that Plaintiffs' Expert's testimony concerning the 1983 incident (relevant to the immunity issue) would not add anything:

> We have the stipulation of 1983, so there's no reason for him to come here and say there was a 1983 incident and therefore they knew or should have known. That issue is already in front of the jury by agreement of the parties. I don't know what other purpose you wanted him to testify.

R.R. at 393a. Thus, when the trial resumed the next morning, Plaintiffs rested.

## 4. Defendant's Expert Evidence

At that point, Defendant presented testimony from its expert, Randy Behmke (Defense Expert). Defense Expert also testified that the industry standard for clearing blockages is to break the clog as fast as possible. R.R. at 427a-29a. Because water is continuously backing up behind the clog, speed is of the essence. R.R. at 428a-29a.

Based upon his review of the record of the incident, including affidavits and depositions of the people involved, Defense Expert testified the field crew followed the industry standard by taking care of the problem as quickly and efficiently as they could. R.R. at 433a-34a. Upon arriving at 25 Gable Hill Road, the crew immediately located the clog and broke it with the water jet. Id. A downstream resident then approached the crew and told them that sewer water was running into her basement or into her house. R.R. at 434a.

The crew then proceeded to the downstream manhole and located the clog about four or five feet from the manhole. Id. Unable to break it with the water jet, the crew used a root cutter to break the clog. Id.

Defense Expert opined that the field crew did not deviate from industry standards in response to either the upstream or downstream blockages. R.R. at 435a. They immediately responded to both blockages and did everything they could to break the clogs. Id.

11

In summary, Defense Expert testified that Defendant's field crew did not breach any industry standard. Rather, Defendant followed the standard protocol employed across the Commonwealth. In an emergency situation, there is no time to delay action in order to conduct an inspection of the sewer lines. R.R. at 428a-30a.

To that end, Defense Expert testified there was not enough time to set up and use the camera truck to look for blockages downstream. R.R. at 431a-32a. In the best case scenario, a camera search during the 2012 incident would have required at least one hour. Id. In responding to an emergency blockage, a field crew does not have an hour or more to wait. Id.[4]

## 5. Directed Verdict

Following the close of evidence, Plaintiffs' counsel argued that expert testimony was not required for the jury to determine whether Defendant was negligent in failing to check the pipe downstream at 5 Gable Hill Road. Defendant responded that it is not within the common knowledge of a lay person to know how to manage, maintain and clean a sewer. R.R. at 485a-86a.

---

[4] As to the question of constructive notice from previous blockage (relevant to the immunity issue), Defense Expert testified that absent a record of a blockage at that location within the last five years, he always just responded to the blockage without a downstream check of the lines. R.R. at 439a. Defense Expert indicated that the five-year limit was his general rule of thumb, based on talking with other townships, municipalities and authorities. R.R. at 440a.

In addition, Defense Expert testified on redirect that the 1983 root problem was further up the pipeline from the 2012 blockage. R.R. at 454a-57a. Defense Expert explained that if the blockage was in the same place as 29 years ago, more than one house would have been affected. Id.

12

Ultimately, the trial court reasoned (with emphasis added):

How you clean a sewer line is something not within the common knowledge and experience of an average lay person.

\* \* \* \*

The law here, it seems to me, does not – this case does not fit in those cases where it falls within the common knowledge of a lay person to determine the right way to clean a sewer.

R.R. at 488a-89a.

Having determined Plaintiffs needed to present expert testimony to establish a *prima facie* negligence case, the trial court entered a directed verdict in favor of Defendant.[5]

### 6. Post-Trial and Post-Verdict Motions

In May 2014, Plaintiffs filed a motion for post-trial relief seeking a new trial on the ground that the trial court abused its discretion by (1) precluding Plaintiffs' Expert from rendering an expert opinion on negligence, and (2) not allowing the jury to determine negligence without an expert opinion. On July 30, 2014, the trial court denied Plaintiffs' motion for post-trial relief. Ultimately, the trial court issued an opinion confirming its decision on the merits. See Tr. Ct., Slip. Op, 1/6/15 (First Appeal: 1462 C.D. 2014), at 1-12.

---

[5] The trial court also determined a jury question existed as to constructive notice of a dangerous condition. R.R. at 487a. As discussed above, this jury question pertained to the immunity issue, not the negligence issue.

13

In addition, Defendant filed a motion for post-verdict relief to revive its motions *in limine*. Initially, the trial court denied Defendant's motion for post-verdict relief. However, in November 2014, after Plaintiffs filed their appeal, the trial court granted Defendant's post-verdict motion. In response, Plaintiffs filed a second appeal at 2246 C.D. 2014.

In their Pa. R.A.P. 1925(b) statement of errors complained of on appeal, Plaintiffs argued that under Pa. R.A.P. 1701, the trial court lacked jurisdiction after Plaintiffs filed their appeal to grant Defendant's motion for post-verdict relief. Ultimately, the trial court agreed with Plaintiffs. In its second opinion, the trial court recognized it lost jurisdiction when Plaintiffs filed their appeal and dismissed its November 2014 order granting Defendant's post-verdict motion. However, the trial court observed, this error did not affect the resolution of this case and dismissed Plaintiffs' second appeal as moot. See Tr. Ct., Slip. Op, 1/6/15 (Second Appeal: 2246 C.D. 2014), at 1-3. In its conclusion, the trial court noted, Plaintiffs' second appeal should be quashed. Id. at 3.

### III. Issues

Plaintiffs present two issues for our review.[6] Plaintiffs first contend the trial court erred or abused its discretion in finding that Plaintiffs' Expert's report and testimony during the hearing on the threshold motion lacked a

---

[6] Our review of a trial court's grant of a directed verdict is limited to determining whether the trial court abused its discretion or committed an error of law that controlled the outcome of the case. Knox v. Se. Pa. Transp. Auth., 81 A.3d 1016 (Pa. Cmwlth. 2013). "In deciding a motion for directed verdict, the trial court must accept as true all facts and inferences which support contentions made by the party against whom the motion is made and shall reject all testimony and references to the contrary." Id. at 1021 (citation omitted).

reasonable degree of certainty, and were thus legally insufficient, thereby precluding Plaintiffs' Expert from rendering an opinion on Defendant's negligence. Second, Plaintiffs contend the trial court should not have precluded Plaintiffs' Expert's opinion because he stated his opinions were based solely on his personal professional opinion without reference to industry authority or standard.

For its part, Defendant raises the issue of whether the trial court abused its discretion by denying its motion to preclude Plaintiffs' Expert's testimony based on his lack of qualifications.

## IV. Discussion
### A. Plaintiffs' Expert's Testimony (Reasonable Degree of Certainty)
### 1. Argument

Plaintiffs first contend the trial court abused its discretion in precluding Plaintiffs' Expert's testimony because he used the words "high probability" in his report and because he stated during the threshold hearing that his conclusions were based on his personal professional opinion. Rather, Plaintiffs' Expert's testimony was based on his experience and his review of the records. When an expert consults numerous sources and uses that information, together with his own professional knowledge and experience, to arrive at his opinion, that opinion is regarded as evidence in its own right. United States v. Williams, 447 F.2d 1285 (5th Cir. 1971), cert. denied, 405 U.S. 954 (1972).

Further, in determining whether an expert's opinion is rendered to the requisite degree of certainty, the court examines the expert's testimony in its

entirety. <u>Carrozza v. Greenbaum</u>, 866 A.2d 369 (Pa. Super. 2004). That an expert may have used less definite language does not render his entire opinion speculative if at some time during his testimony he expressed his opinion with reasonable certainty. <u>Id.</u> Also, an expert in this jurisdiction need not use the "magic words" *reasonable degree of certainty*. <u>Commonwealth v. Spotz</u>, 756 A.2d 1139, 1160 (Pa. 2000). Rather, the court must look to the substance of the expert's testimony to determine whether the opinions were based on a reasonable degree of professional certainty. <u>Id.</u>

In light of these principles, Plaintiffs argue, their Expert's testimony was sound and admissible. Plaintiffs' Expert, a forensic mechanical engineer, worked on over 4,000 cases over 36 years. R.R. at 331a. Fifteen of those cases dealt with sewer main blockages. R.R. at 331a-32a. Plaintiffs' Expert further testified as to pipe blockage issues he investigated in an office building in Haverford, Pennsylvania, and in a school building in Philadelphia. R.R. at 332a-33a.

In the present case, Plaintiffs' Expert reviewed the complaint, a map of the sewer system near the houses involved, an inspection report for the sewer line in question, internal photographs of the sewer line, Defendant's damage reports pertaining to the incident, and several of Defendant's newsletters from May 2006 through May 2008. R.R. at 336a.

At the close of the threshold hearing, the trial court determined Plaintiffs' Expert could testify as an expert under Pennsylvania law. R.R. at 385a-86a.

Nonetheless, the trial court found Plaintiffs' Expert's testimony legally insufficient because he used the words "high probability" in his report and because his conclusions were based merely on his own personal professional opinion. R.R. at 386a-89a.[7]

As to the removal of the clog, Plaintiffs' Expert opined in his report:

> *To a reasonable degree of engineering certainty based on present information, and subject to revision if additional information is received in the future, in my opinion:*
>
> The subject incident would not have occurred if [Defendant] had not cleared the initial clog at 25 Gable Hill Road improperly such that the large volume of water and solid material freed by clearing the initial clog created consequential clogs downstream which in turn caused sewage to back up into [Plaintiffs'] houses.

R.R. at 81a (emphasis by underline added).

---

[7] Plaintiffs also contend the trial court misunderstood their Expert's testimony. Plaintiffs assert their Expert was attempting to establish a dangerous condition of the aging clay pipes that created a reasonably foreseeable risk of tree root infiltration and injury, and constructive notice of the dangerous condition, for purposes of the utilities exception to local government immunity in 42 Pa. C.S. §8542(b)(5). Plaintiffs argue what constitutes a dangerous condition under the Tort Claims Act is a question of fact for the jury. Bendas v. White Deer Twp., 611 A.2d 1184 (Pa. 1992). Here, Plaintiffs assert their Expert testified that the decaying pipe and tree root infiltration constituted a dangerous condition of which Defendant knew or should have known. These arguments, however, deal with the immunity issue, not the issue of negligence, which was the basis for the trial court's entry of a directed verdict.

Plaintiffs assert that their Expert testified within a reasonable degree of engineering certainty that Defendant's removal of the first clog *caused* the backup and flooding; their Expert never testified Defendant's actions *possibly* or *probably* caused the backup and flooding. In other words, Plaintiffs' Expert was clear on causation. As such, the trial court abused its discretion in ruling that Plaintiffs' Expert's report and testimony were insufficient because he uttered the phrase "high probability" to describe his opinion.

## 2. Analysis

Admissibility of expert opinion is left to the sound discretion of the trial court. <u>Snizavich v. Rohm and Haas Co.</u>, 83 A.3d 191 (Pa. Super. 2013), <u>appeal</u> <u>denied</u>, 96 A.3d 1029 (Pa. 2014). As such, an appellate court will not reverse the trial court's decision absent an abuse of discretion. <u>Id.</u> An abuse of discretion may not be found where an appellate court might have reached a different conclusion than the trial court. <u>Id.</u> Rather, an abuse of discretion requires a result of manifest unreasonableness, partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous. <u>Id.</u>

An expert opinion based on mere possibilities is not competent evidence. <u>Viener v. Jacobs</u>, 834 A.2d 546 (Pa. Super. 2003). To be competent, expert testimony must be stated with reasonable certainty. <u>Peerless Dyeing Co. v. Indus. Risk Insurers</u>, 573 A.2d 541 (Pa. Super. 1990). Also, an expert need not use the magic words *reasonable degree of certainty*. <u>Spotz</u>. Rather, the court must

18

look to the substance of the expert's testimony to determine whether the opinions were based on a reasonable degree of professional certainty. Id.

In this case, Plaintiffs' Expert stated in his report, "[Defendant] knew or should have known that that the sudden release of an abnormally large volume of water and solid material would with high probability create clogs on infiltrated roots downstream of the initial clog." R.R. at 81a (emphasis added). When asked about the phrase "high probability" during the threshold hearing, Plaintiffs' Expert testified as follows:

> THE COURT: With regard to your opinion, sir, is it your opinion that there's a good chance that the release of the first clog that sent water and material of high enough volume, that with a high probability it created the second clog. That's your opinion?
> THE WITNESS: Yes.
> THE COURT: And that's the degree to which you are stating your opinion?
> THE WITNESS: Yes, to a reasonable degree of engineering certainty.
> THE COURT: That it's a high probability.
> THE WITNESS: Yes.
> THE COURT: That it's possible. It's probable?
> THE WITNESS: Well, if we're going to use words, we shouldn't use the word possible because I think it was probable. It was more than possible.
> THE COURT: Well, you first agreed to possible and then you said probable. But that's the best you can do. It's probably.
> THE WITNESS: It's probably.

R.R. at 346a-47a.

Regardless of the wording in Plaintiffs' Expert's report, his responses to the trial court during the threshold hearing are instructive. During this live

19

testimony, Plaintiffs' Expert responded to questioning about his opinion on causation. While at one point he used the magic words "reasonable degree of engineering certainty," Plaintiffs' Expert repeatedly limited his causation opinion to somewhere in the *possible* to *probable* continuum. Consequently, the trial court precluded Plaintiffs' Expert from stating his opinion as to whether the sudden release of a large volume of water and solid material caused or created the second blockage. R.R. at 389a. For the same reason, the trial court precluded Plaintiffs' Expert from testifying as to the basis for his opinion, which included the age and makeup of the pipes. Id. Accordingly, we discern no abuse of discretion in the trial court's determination that any causation opinion from Plaintiffs' Expert would not be expressed with sufficient certainty.

Nevertheless, evidence regarding causation was of lesser moment in this case. This is because the witnesses agreed about how the flooding occurred. However, the causation aspect of the Plaintiffs' Expert's testimony raises doubts about the overall quality of his opinions and about his tendency to "hedge."

## B. Plaintiffs' Expert's Testimony (Personal Professional Opinion)

### 1. Argument

Plaintiffs also argue the trial court should not have precluded their Expert's opinion because his opinions were based on his personal professional opinion. Plaintiffs assert their Expert's opinions were not based on personal belief but rather constituted professional opinions based on years of experience and a review of Defendant's documents, inspection reports and photographs. Plaintiffs' Expert is allowed to render an opinion based in part on personal experience. Where an expert uses several sources to arrive at his opinion, and has noted the

20

reasonable and ordinary reliance on similar sources by other experts in the field, and has coupled this reliance with personal observation, knowledge and experience, the expert's testimony should be permitted. Taliferro v. Johns-Manville Corp., 617 A.2d 796 (Pa. Super. 1992).

In addition, because the trial court found Plaintiffs' Expert competent to testify, any disagreement about his methodology should go to the weight of the evidence. Thus, Plaintiffs urge, the trial court abused its discretion by disqualifying his opinion because he described his opinion as a personal professional opinion. To that end, Plaintiffs assert the trial court's role as gatekeeper is not intended to serve as a replacement for the adversarial system. See, e.g., United States v. 14.38 Acres of Land, More or Less Situated in Leflore County, State of Mississippi, 80 F.3d 1074 (5th Cir. 1996). Rather, vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky, but admissible evidence. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).

## 2. Analysis

This aspect of the trial court's ruling is of more consequence because it goes directly to Plaintiffs' Expert's ability to express an opinion on negligence, that is, breach of the appropriate standard of care.

Admissible expert testimony that reflects the application of expertise requires more than simply having an expert offer a lay opinion. Snizavich.

Further, expert testimony must be based on more than mere personal belief; it must be supported by reference to facts, testimony and empirical data.  Id.

Plaintiffs' Expert conceded there were no industry standards and no literature supporting his opinion.  R.R. at 367a.  Further, Plaintiffs' Expert lacked any personal experience in the emergency treatment of blocked sewer pipes.  Rather, he relied on his personal opinion or belief that Defendant's field crew, before removing the first clog, should have "looked before they leaped, and they didn't look before they leaped."  R.R. at 366a.  To that end, Plaintiffs' Expert testified it does not matter whether you are a doctor performing an operation or a welder doing some welding in a building, you must first look at the circumstances and see what precautions you need to take to avoid ancillary damages.  Id.

In short, it appears that Plaintiffs' Expert was a professional expert witness lacking any practical experience with sewer operations.  See R.R. at 330a-35a.  In response to questioning by the trial judge, of the over 4000 cases on which he worked, he could remember details of only two that involved sewer pipe blockages: one in an office building in Haverford where the pipe was installed wrong; and, one in a school building in Philadelphia where the wrong sized pipe was installed.  R.R. at 332a-34a.  These cases apparently dealt with sewer lateral pipes in buildings rather than sewer main pipes in public rights-of-way.  On further questioning by the trial judge, he was unsure if any of his experience dealt with the proper way to clear blockages.  R.R. at 333a-34a.  He did not recall any prior cases dealing with the obligations of a municipal authority when responding to an emergency blockage.  R.R. at 332a.

Further, Plaintiffs' Expert did not base his opinions on accepted industry standards, on engineering principles, or on any professional education. Rather, he offered to testify as to precautions that allegedly apply in all endeavors. Absent any basis in industry standards, scientific principles, special education or practical experience, we discern no abuse of discretion in the trial court's exclusion of Plaintiffs' Expert's negligence opinion, because it was not based on specialized knowledge unavailable to lay persons. Snizavich.

### C. Need for Expert Testimony

### 1. Argument

In the alternative, Plaintiffs contend the trial court abused its discretion and misapplied the law in determining Plaintiffs needed expert testimony to prove negligence. Plaintiffs essentially assert Defendant took the position at trial that there is a specific standard that applies to Defendant when removing clogs, and Plaintiffs needed an expert to testify that Defendant breached that standard. The trial court, however, initially denied Defendant's request for a nonsuit on the alleged basis that Plaintiffs failed to present any evidence that Defendant's field crew breached any duty in clearing the blockages the way they did. See R.R. at 401a-08a. Plaintiffs emphasize the trial court recognized Defendant failed to establish a statewide standard of care for clearing blockages other than by talking to people across the Commonwealth. See R.R. at 405a, 466a. To that end, Defense Expert testified there is no written Commonwealth policy or standard on the removal of sewer blockages. R.R. at 441a.

Here, Plaintiffs further argue, the jury had the capacity to determine on its own whether Defendant was negligent without an expert opinion. Plaintiffs assert this ordinary negligence case is essentially about whether Defendant exercised reasonable care in not inspecting the pipe for blockages downstream before actively flushing upstream and causing a large volume of water and sewage to flow downstream. In our case, the trial court recognized there were no published or adopted standards that Defendant must follow in removing a clog. According to Defense Expert, Defendant need only check the main downstream of a clog if blockages occurred during the previous five years.

Therefore, Plaintiffs urge, the present case sounds in ordinary negligence. Unlike personal injury cases involving the professional analysis of medical standards and procedures, a jury of laypersons could have determined whether Defendant acted negligently when they failed to inspect, discover and remove the downstream blockage prior to actively unclogging the initial blockage upstream with a high velocity water jet. Expert testimony is unnecessary where the matter under investigation is so simple, and the lack of skill or want of care so obvious, as to fall within the experience and comprehension of even nonprofessional persons. Welsh v. Bulger, 698 A.2d 581 (Pa. 1997).[8]

---

[8] Plaintiffs further assert the log record of the 1983 blockage showed a similar tree root blockage which should have put Defendant on constructive notice of a dangerous condition at that location. All of the elements needed for recovery under the Tort Claims Act were identified at trial, and all the facts needed to recover were in evidence. For example, Defense Expert testified he would keep an eye on the downstream line if a prior blockage occurred at that location within the previous five years. Moreover, the trial court determined a jury question existed as to whether tree-root blockage 29 years ago provided Defendant with constructive notice of a dangerous condition. Therefore, Plaintiffs urge, the consequences of ignoring the dangerous condition downstream that caused the backup and flooding fall squarely on Defendant under the utilities exception to local government immunity.

## 2. Analysis

Expert testimony becomes necessary when the subject matter of the inquiry is one involving special skills and training not common to the ordinary lay person.  See Storm v. Golden, 538 A.2d 61 (Pa. Super. 1988) (expert testimony needed in legal malpractice action).  Expert testimony is often used to help jurors understand issues and evidence that is outside of the average juror's realm of experience.  Young v. Dep't of Transp., 744 A.2d 1276 (Pa. 2000).  Generally, expert testimony is necessary to establish negligent practice in any profession. Tennis v. Fedorwicz, 592 A.2d 116 (Pa. Cmwlth. 1991).

Here, the work Defendant performs, including the emergency clearing of sewer main blockages, is not something with which the average layperson would be familiar.  Thus, the trial court properly determined expert testimony was required.  Young; Tennis; Storm.  As such, we discern no error or abuse of discretion in the trial court's holding that Plaintiffs needed expert testimony to prove negligence.  Id.

More importantly, the jury heard only from Defendant's Field Chief, Managing Director, Field Technician, and Defense Expert.  They all testified a sewer blockage is considered an emergency which must be alleviated immediately. Although Defense Expert testified that if there is a history of downstream blockages within the last five years, a check of the downstream lines would be proper, he further testified the 1983 root problem occurred at a different location than the 2012 blockage in this case.  See R.R. at 454a-57a.

In short, all four witnesses testified the means and methods used by Defendant to immediately remove the clog were consistent with the standards across the Commonwealth and the way that professionals in this field perform their work. Therefore, the only evidence the jury heard was that Defendant did not breach any duty or standard of care.

Plaintiffs' arguments regarding the 1983 blockage and constructive notice of an allegedly "dangerous condition" do not support a contrary conclusion on negligence. This is because the constructive notice evidence pertained to a different issue, immunity. The temporally remote 1983 blockage does not tend to prove 2012 negligence. Consequently, the trial court did not err in granting a directed verdict on the negligence issue.

### D. Motion to Preclude Plaintiffs' Expert's Testimony

### 1. Argument

Defendant contends the trial court erred by denying its threshold motions and finding Plaintiffs' Expert qualified to express expert opinions. The trial court eventually agreed and granted Defendant's post-verdict motion seeking to revisit their motions.

However, as noted above, Plaintiffs filed a second appeal at 2246 C.D. 2014. In their Pa. R.A.P. 1925(b) statement of errors complained of on appeal, Plaintiffs argued that under Pa. R.A.P. 1701(a), the trial court lacked

jurisdiction after Plaintiffs filed their appeal to grant Defendant's motion for post-verdict relief. See Ostrowski v. Pethick, 590 A.2d 1290 (Pa. Super. 1991) (a trial court's denial of post-trial relief, after the appellant filed an appeal, was a nullity; thus, an appeal from that denial was improper and should be quashed); Kaiser v. 191 Presidential Group, 454 A.2d 141 (Pa. Super. 1982) (a trial court's denial of exceptions, following the filing of an appeal, was a nullity).

Ultimately, the trial court agreed with Plaintiffs. In a second opinion, the trial court recognized it lacked jurisdiction to grant Defendant's post-verdict motion and dismissed its November 2014 order. In any event, given the result here, the issue of whether the trial court erred in denying Defendant's threshold motions is now moot. However, we agree with the trial court that we must quash Plaintiffs' appeal at 2246 C.D. 2014 as improperly filed. Ostrowski; Kaiser.

The respected trial court's changes of mind make this case more complicated. Nevertheless, we observe that the trial court made its threshold determinations regarding Plaintiffs' Expert, and denied the motion for nonsuit, before all the trial evidence was received. After hearing all the evidence, the trial court was in a better position to rule on the Defendant's motion for directed verdict. At that stage, and with the benefit of hindsight, the merit of Defendant's qualifications-based threshold challenge and motion for nonsuit may have been more apparent. Regardless, we cannot say denial of the qualification-based threshold challenge was an abuse of discretion at the time it was made. See, e.g., Reardon v. Meehan, 227 A.2d 667 (Pa. 1967) (determinations as to the qualifications of a witness fall within the discretion of the trial court).

## V. Conclusion

Discerning no error or abuse of discretion in the trial court's determination that Plaintiffs' Expert's opinions were not expressed with sufficient certainty to establish causation, and were not based on accepted industry standards or practical expertise, we reject Plaintiffs' contention that the trial court abused its discretion by precluding Plaintiffs' Expert from rendering an opinion as to Defendant's negligence. In addition, we discern no error or abuse of discretion in the trial court's determination that Plaintiffs needed to present expert testimony in order to establish Defendant's negligence. Therefore, because the only evidence the jury heard was that Defendant did not breach any duty or standard of care, we conclude the trial court did not err in granting a directed verdict. Accordingly, we affirm the trial court's order at 1462 C.D. 2014.

Further, as discussed above, Plaintiffs' appeal from the trial court's void order granting Defendant's post-verdict motion, after Plaintiffs filed their appeal at 1462 C.D. 2014, was improper. Ostrowski; Kaiser. Therefore, we quash Plaintiffs' appeal at 2246 C.D. 2014. Id.

 

ROBERT SIMPSON, Judge

Judge McCullough did not participate in the decision in this case.

28

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark Hogan                                    :
Karen Hogan                                   :
                                              :
      v.                                          :
                                              :
Lower Bucks County Joint                      :
Municipal Authority                           :
                                              :
David Anderson                                :
Maureen Anderson                              :
                                              :
      v.                                          :   Nos. 1462 C.D. 2014
                                              :         2246 C.D. 2014
Lower Bucks County Joint                      :
Municipal Authority                           :
                                              :
Jeffery Hudson                                :
                                              :
      v.                                          :
                                              :
Lower Bucks County Joint                      :
Municipal Authority                           :
                                              :
Appeal of: Mark Hogan, Karen Hogan,           :
David Anderson, Maureen Anderson              :
and Jeffery Hudson                            :

# **O R D E R**

     **AND NOW**, this 26th day of August, 2015, for the reasons stated in the foregoing opinion: the order of the Court of Common Pleas of Bucks County, appealed at No. 1462 C.D. 2014 is **AFFIRMED**; the order of said Court, appealed at No. 2246 C.D. 2014, is **QUASHED**.

 

                                   _____
                                   ROBERT SIMPSON, Judge